**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LETTUCE ENTERTAIN YOU ENTERPRISES, INC.; 12 W. ELM LLC d/b/a SPARROW; CHICAGO SCOOPS LLC; GIBSONS L.L.C.; GOLDEN FIVE, INC.; G DOCK, LLC d/b/a HARBOR CHICAGO; HOT ASIAN BUNS, LLC d/b/a WOW BAO; HUBBARD HOUSE RESTAURANT LLC d/b/a/ HUBBARD INN; JB AT RIVER NORTH d/b/a OLD CROW SMOKEHOUSE; JK SHIELDS LLC d/b/a SMYTH & THE LOYALIST; MAC PARENT, LLC; MANNY'S COFFEE SHOP, INC. d/b/a MANNY'S CAFETERIA & DELICATESSEN; NOODLES & COMPANY; ROTI RESTAURANTS, INC.; RPDC ILLINOIS LLC d/b/a ROBERT'S PIZZA AND DOUGH COMPANY; EPIC BURGER, INC.; FAST SANDWICH HOLDINGS INC.; 2263 N. LINCOLN CORP. d/b/a THE DIME; BANGERS & LACE CHICAGO LLC d/b/a BANGERS & LACE CHICAGO; DDMB INC. d/b/a EMPORIUM ARCADE BAR; R.F.R., INC. d/b/a GOLDEN CORRAL RESTAURANT; SARDHARIA BROTHERS, INC. d/b/a TANDOOR CHAR HOUSE; SECOND VENTURE LLC d/b/a L3 HOSPITALITY GROUP; WELL DONE HOSPITALITY GROUP,DDMB2 LLC d/b/a EMPORIUM ARCADE BAR; BANGERS & LACE EVANSTON, LLC d/b/a BANGERS & LACE; BANGERS & LACE ROSCOE VILLAGE LLC d/b/a KITE STRING CANTINA; BARNBQ LLC d/b/a OLD GROUNDS SOCIAL; BUCKTOWN DYSFUNCTIONAL PUB, INC.; DB STATE LLC d/b/a DOUGH BROS; DUSABLE MUSEUM OF AFRICAN AMERICAN HISTORY, INC.; DIVISION STREET CAFÉ LLC d/b/a LITTLE VICTORIES; FULTON PEORIA PARTNERS LLC d/b/a EMPORIUM ARCADE BAR; GC LOOMINGDALE, LLC; HUBBARD STEAK, LLC | Case No. 20-cv-05140<br><br>Hon. Robert M. Dow, Jr. |

i

d/b/a JOY DISTRICT; CHICAGO ACADEMY OF SCIENCES / PEGGY NOTEBAERT NATURE MUSEUM; JO-KIM LOUNGE CORP. d/b/a HAPPY'S BAMBOO BAR AND LOUNGE; LOGAN SQUARE TAVERN LLC D/B/A SPILT MILK; NAS RESTAURANT GROUP, INC. d/b/a MIXED GREENS; PRIMOS LLC d/b/a HVAC PUB; SAN BENEDETTO, LLC d/b/a JULIET'S; and URBAN PLATES LLC,

*Plaintiffs*,

vs.

EMPLOYERS INSURANCE COMPANY OF WAUSAU, AFFILIATED FM INSURANCE COMPANY; ARGONAUT GREAT CENTRAL INSURANCE COMPANY; BADGER MUTUAL INSURANCE COMPANY; THE CHARTER OAK FIRE INSURANCE COMPANY; THE CINCINNATI INSURANCE COMPANY; CITIZENS INSURANCE COMPANY OF AMERICA; HARTFORD FIRE INSURANCE COMPANY; ILLINOIS CASUALTY COMPANY; OHIO SECURITY INSURANCE COMPANY; NORTH AMERICAN ELITE INSURANCE COMPANY; SENTINEL INSURANCE COMPANY, LIMITED; SOCIETY INSURANCE; SPECIALTY RISK OF AMERICA d/b/a SPRISKA; STARR SURPLUS LINES INSURANCE COMPANY; SECURA SUPREME INSURANCE COMPANY; TWIN CITY FIRE INSURANCE COMPANY; VIGILANT INSURANCE COMPANY; and ZURICH AMERICAN INSURANCE COMPANY,

*Defendants*.

## CERTAIN DEFENDANTS'[1] JOINT OPPOSITION IN RESPONSE

## TO PLAINTIFFS' MOTION TO REMAND

---

[1] The Certain Defendants submitting this joint brief are: Employers Insurance Company of Wausau, Ohio Security Insurance Company, Affiliated FM Insurance Company, Badger Mutual Insurance Company, The Charter Oak Fire Insurance Company, The Cincinnati Insurance Company, Citizens Insurance Company of America, Hartford Fire Insurance Company, North American Elite Insurance Company, Sentinel Insurance Company, Ltd., Society Insurance, Twin City Fire Insurance Company, and Vigilant Insurance Company.

## TABLE OF CONTENTS

**Table of Authorities**……………………………………………………………….... v

**Introduction**………………………………………………………………………... 1

**Procedural Background**…………………………………………………………… 3

**Analysis**……………………………………………………………………………. 5

**I. There Is Complete Diversity of Citizenship**......................................................... 5

        **A.**    **The Fraudulent Joinder Doctrine Applies**…………………………. 5

        **B.**    **Fraudulent Misjoinder Also Applies To Defeat Remand**…...…….. 11

                **1.**    **The Fraudulent Misjoinder Doctrine**………………………….. 11

                **2.**    **The Doctrine Should Be Adopted In This Unprecedented Case**………………………………………………………….. 14

                **3.**    **The Fraudulent Misjoinder Rule Applies In This Case**…….. 21

**II. Plaintiffs' Unprecedented Action Will Not Promote Efficiency, Judicial Economy, Cost Savings and Lead To Quick Decisions On The Merits**…….. 22

**III. Public Policy Strongly Favors Federal Diversity Jurisdiction By Disregarding The Improperly Joined Parties**…………...………………….. 24

**Conclusion**……………………………………………………………………… 25

# **TABLE OF AUTHORITIES**

## **Cases**

*Alabama Southern Railway Co. v. H.C. Thompson*, 200 U.S. 206 (1906)......... 5

*Asher v. Minnesota Mining and Mfg. Co.*, 2005 WL 1593941 (E.D. Ky. 2005).. 12, 13, 20,22

*In re Benjamin Moore & Co.*, 318 F.3d 626 (5th Cir. 2002)………………….... 13

*Brietner v. Merck & Co., Inc.*, 2019 WL 316026 (D.N.J. Jan. 24, 2019)……….. 13, 20

*Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773 (2017)……………. 6, 7, 8, 9, 11

*Bunnell v. Oklahoma MH Properties, LP*, 2012 WL 12863916 (W.D. Ok. May 11, 2012)……………………………………………………………………….. 13

*Burns v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 401 (S.D.W.V. 2004)…………………………………………………………………………… 13, 22

*Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000)……………………. 12

*Conrad Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176 (1907).. 5

*Creighton v. Bristol-Myers Squibb & Co.*, 2013 WL 12333214 (N.D. Ill. May 5, 2013)……………………………………………………………………….. 15

*Destiny Health, Inc. v. Connecticut Gen. Life Ins. Co.*, 741 F. Supp. 2d 901 (N.D. Ill. 2010)……………………………………………………………….. 3

*In re Diet Drugs*, No. 1203, 1999 WL 554584 (E.D. Pa. July 16, 1999)……….. 13, 23

*Elrod v. Bayer Corp.*, 2020 WL 4284416 (N.D. Ill. July 27, 2020)……………. 20

*Emil Buck & Sons, Inc. v. Int'l Press Servs., Inc.*, 1986 WL 7668 (N.D. Ill. June 27, 1986)……………………………………………………………….. 20

*First Merit Bank v. Grasso*, 2012 WL 3308737 (N.D. Ill. 2012)…………………. 15

*In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 2012 WL 1118780 (D.N.J. Apr. 3, 2012), *aff'd*, 751 F.3d 150 (3d Cir. 2014)..……….. 12, 13, 20

*Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407 (7th Cir. 2000)…………………. 10, 11

*Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir. 1993)…………………. 16

*Greene v. Wyeth*, 344 F. Supp. 2d 674 (D. Nev. 2004)…………………………… 13, 21, 22

*Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 2007 WL 2572048 (D. Minn. Aug. 30, 2007)………………………………………………………… 20

*Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D.W.Va. Sept. 3, 2009)………………………………………………………………………………… 13, 21

*Legg v. Wyeth*, 428 F.3d 1317 (11th Cir. 2005)…………………………………… 5

*Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011 (E.D. Wis. 1999)….. 5

*Livingston v. Hoffman-La Roche, Inc.*, 293 F. Supp. 3d 760 (N.D. Ill. 2018)….. 18, 19

*McKinney v. Bd. of Trustees of Maryland Cmt. Coll.*, 955 F.2d 924 (4th Cir. 1992)………………………………………………………………………………… 5

*Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014 (N.D. Ill. 2015)………………………………………………………………………………… 5, 16

*Milliet v. Liberty Mut. Ins. Co.*, 2008 WL 147821 (E.D.La. Jan. 11, 2008)…….. 13

*Poulos v. Naas Foods, Inc.*, 959 F.2d 69 (7th Cir. 1992)………………………… 7, 16

*Reed v. American Med. Sec. Group*, 324 F. Supp. 2d 798 (S.D. Miss. 2004)… 13

*In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136 (S.D.N.Y. 2001)…………. 13, 22

*Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d 842 (S.D. Ill. 2006)…………. 19, 20

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*, No. 20 CV 2160, 2020 WL 5630465, at *1 (N.D. Ill. Sept. 21, 2020)……………………………………… 23

*Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752 (7th Cir. 2009)……………. 5, 20

*Schwartz v. State Farm Mut. Auto Ins. Co.*, 174 F.3d 875 (7th Cir. 1999)…….. 5

*Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777 (S.D. Miss. 2003)…… 13

*Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008)………………………….. 13, 20

*Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996)………….. 12, 13, 22

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040 (N.D. Ill. 2016)……………….. 6

*Townsel v. DISH Network*, 668 F.3d 967 (7th Cir. 2012)………………………… 14

*Vogel v. Merck & Co., Inc.*, 476 F. Supp. 2d 996 (S.D. Ill. 2007)……………….  17

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    779 F. Supp. 2d 846 (S.D. Ill. 2011)…………………………………………  8, 9, 10

## Statutes & Court Rules

28 U.S.C. § 1441…………………………………………………………………  19

28 U.S.C. § 1446…………………………………………………………………  16, 19

28 U.S.C. § 1447…………………………………………………………………  19

735 ILCS 5/2-404…………………………………………………………………  20

735 ILCS 5/2-405…………………………………………………………………  20

Fed. R. Civ. Pro. 20(a)……………………………………………………………  21

## Other Authorities

Fisher, Jeff, *Everybody Plays the Fool, Sometimes; There's No Exception to
    the Rule: Procedural Misjoinder Is Not an Exception to the Voluntary-
    Involuntary Rule*, 60 Baylor L. Rev. 993 (2008)……..………………………  14, 18,
    19, 22

Hines, Laura J. & Gensler, Steven S., *Driving Misjoinder: The Improper Party
    Problem in Removal Jurisdiction*, 57 Ala. L. Rev. 779 (2006)…………........  14, 18,
    19, 21

Percy, E. Farish, *Defining the Contours of the Emerging Fraudulent
    Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y 569 (2006)……...................  14, 18,
    19, 20,
    22

**Introduction**

Plaintiffs' counsel has improperly chosen to file – in a single action in state court – a lawsuit by 42 separate and unrelated insureds against 19 separate insurance companies, involving separate and unrelated alleged losses and insurance contracts. The case involves over 710 locations, in 38 states, as well as in British Columbia. Plaintiffs argue that executive orders, proclamations, and guidelines in these 38 separate states, and countless counties and municipalities, caused physical damage to the 710 plus locations. Each Plaintiff contracted with a single Defendant insurer.

This lawsuit is an attempt to wrongfully consolidate numerous unrelated claims by each individual Plaintiff against its respective Defendant insurer into one action by improperly joining the many separate Plaintiff insured-Defendant insurer pairs. This combined improper joinder of parties and improper joinder of claims is "fraudulent consolidation." In this lawsuit, in almost every instance, there is complete diversity between the insured Plaintiff and its respective individual Defendant insurer. Plaintiffs are now seeking to use the fraudulent consolidation of certain non-diverse Plaintiff-Defendant pairs into one action with numerous other diverse Plaintiff-Defendant pairs in an effort to extinguish the rights to removal of the otherwise diverse Defendant insurers. The Judicial Panel on Multidistrict Litigation recently denied the requests of a multitude of insureds to consolidate hundreds of federal cases against numerous insurers into a single, industry-wide MDL. The same result is called for here.

Plaintiffs' Motion to Remand should be denied because this Court has subject matter jurisdiction. As explained below, this Court should disregard the citizenship of the non-diverse parties in the few non-diverse Plaintiff-Defendant pairs, by applying the doctrine of fraudulent joinder. Each of the individual Plaintiffs can only plead a viable

cause of action against one of the individual Defendants. For example, Lettuce Entertain You Enterprises, Inc. cannot and does not even purport to plead a cause of action against any Defendant except Employers Insurance Company of Wausau. This lawsuit is nothing but a transparent device to deprive diverse Defendants of their right to remove their cases to federal court. Accordingly, the Motion to Remand should be denied on this basis alone.

Since the fraudulently joinder doctrine clearly applies, the Court does not need to rule on whether the doctrine of fraudulent misjoinder also applies. Nevertheless, it also does apply in this unprecedented case. Despite the fact that the fraudulent misjoinder doctrine has not been adopted by Northern District courts, in this very unique case, this Court should follow the lead of courts in other Circuits and adopt and apply it here. Simply put, these parties and claims are misjoined under the Federal Rules of Civil Procedure. The claims between each Plaintiff and its respective individual insurer Defendant have no connection to the transactions involving the other Plaintiffs and Defendants. Other courts have applied the doctrine of fraudulent misjoinder to deny remand in circumstances of misjoinder even less egregious than this case.

Counsel for Plaintiffs reported to *Crain's Chicago Business* that this is the "mother of all such" Covid-19 insurance suits and that the "scope of this lawsuit—the number of parties and their combined national reach—is unprecedented for its type." See ECF # 18-2. Unprecedented – yes.[2] Proper under joinder rules – No. Designed

---

[2] On August 4, 2020, however, a few days after filing this suit, counsel for Plaintiffs filed a similar suit in state court in New York: *Abruzzo Docg, Inc., et al. v. Acceptance Indemnity Insurance Company, et al.*, No.514089/2020 (Supreme Court of New York, Kings County). Counsel's original complaint improperly joined 45 plaintiff insureds and 25 defendant insurers. On August 25, 2020, counsel filed a 239-page, 984 paragraph Amended Complaint, which now includes 94 plaintiff insureds and 41 defendant insurers, including 7 insurers who are citizens of New York.

solely to improperly bar non-diverse Defendants from exercising their statutory right of removal – absolutely. As this Court has stated, "[w]here removal is permissible, a defendant possesses an important statutory right to transfer the case to a federal forum. A plaintiff cannot defeat that right because it would rather litigate in state court." *Destiny Health, Inc. v. Connecticut Gen. Life Ins. Co.*, 741 F. Supp. 2d 901, 906 (N.D. Ill. 2010). Here, the statutory right of the Defendants must be protected, and Plaintiffs' Motion to Remand should be denied.

## Procedural Background

Plaintiffs filed their Complaint in the Circuit Court of Cook County on July 30, 2020. The Complaint is 160 pages with 657 separately numbered paragraphs. (ECF # 1-1, the "Complaint".) Exhibit A to the Complaint is an Appendix, which is 45 pages long. (ECF # 55-2.) The Appendix lists each of the Plaintiffs, their respective business names, locations, policy numbers, and single insurer. The Appendix lists 627 "locations", however, 83 of those have the notation that there are multiple locations at a specific "location". Accordingly, there are at least 710 locations or properties at issue in this case. Plaintiffs also allege the state of incorporation and principal place of business of each of the Plaintiffs and Defendants. (Complaint, ¶¶ 19-79.)

Plaintiffs have alleged causes of action against only four (4) companies who they allege are incorporated in and/or have their principal place of business in Illinois: Argonaut Great Central Insurance Company; Illinois Casualty Company; Specialty Risk of America d/b/a Spriska; and Zurich American Insurance Company.[3] (Complaint, ¶¶

_____

On September 4, 2020, the case was removed to the United States District Court for the Eastern District of New York, Case No. 20-cv-04160.

[3] As to these four insurance companies, of the at least 710 locations in the Appendix to the

62, 69, 75, 79.)  For the first three insurers, their respective Plaintiff-insureds are alleged to be Illinois citizens.[4]  As to Zurich, the insured is Urban Plates LLC (alleged to be a citizen of Delaware and California).  (Complaint, ¶¶ 59, 312.)  For purposes of diversity, Zurich is a citizen of Illinois and New York (Complaint, ¶ 78), and, therefore, there is diversity between Zurich and its insured.

Once the improperly joined parties are correctly disregarded for purposes of diversity jurisdiction, there is complete diversity between all Plaintiffs and all Defendants, with one immaterial exception.  As pled, Plaintiff R.F.R., Inc. d/b/a Golden Corral Restaurant, is a Missouri corporation with a principal place of business in Farmington, Missouri.  (Complaint, ¶ 53.)  R.F.R. is insured by Secura Supreme Insurance Company, incorporated and with its principal place of business in Wisconsin, so there is diversity between this plaintiff and its insurer defendant.  (Complaint, ¶¶ 72, 352.)  While Plaintiffs allege that North American Elite Insurance Company ("North American Elite") is a New Hampshire corporation, with its principal place of business alleged to be in Kansas City, Missouri  (Complaint, ¶ 71), North American Elite insures Mac Parent LLC (alleged to be a Delaware limited liability company with a principal place of business in Denver, Colorado), and does not insure R.F.R.  (Complaint, ¶¶ 48, 255.)  Thus, although both R.F.R. and North American Elite are alleged to be residents of Missouri, R.F.R. has no possible cause of action against North American Elite.  Further, North American Elite has asserted that its principal place of business is New

---

Complaint, only 33 were insured by these Defendants, which is 4.6% of all the locations involved in the case.  As to the three Illinois Defendants who do not have diversity with their insureds, there are only 14 locations, which is 1.9% of all the locations involved in the case.

[4] For Argonaut, the insured is Gibsons (Complaint, ¶¶ 38, 172); for Illinois Casualty, the insureds are Jo Kim Lounge, Primos, San Benedetto, and Sardharia Brothers (Complaint, ¶¶ 45-52, 56, 57, 216, 224, 376, 384); and for Specialty Risk, the insured is Hubbard Steak (Complaint, ¶¶ 42, 360).

York, not Missouri. (See ECF # 134, ¶¶ 3-4.) Accordingly, the fact that R.F.R. is a Missouri corporation and North American Elite allegedly has its principal place of business in Missouri does not defeat diversity jurisdiction here.

## Analysis

## I.    There Is Complete Diversity of Citizenship

### A.    The Fraudulent Joinder Doctrine Applies

Over 100 years ago, the Supreme Court emphasized that federal courts "should not sanction devices intended to prevent removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in Federal court . . . ." *Conrad Wecker v. National Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907).[5]

Since that time, the doctrine of fraudulent joinder has been employed by federal courts to protect defendants' rights with regard to removal. In applying the fraudulent joinder doctrine, a district court may disregard, for jurisdictional purposes, the citizenship of non-diverse defendants against whom only non-viable claims are asserted. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009); *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999); *Midland Mgmt. Co. v. Am. Alternative Ins. Corp.*, 132 F. Supp. 3d 1014, 1021 (N.D. Ill. 2015).

The fraudulent joinder doctrine applies with equal force to ignore the citizenship of plaintiffs who assert non-viable claims against a single defendant. *Lerma v. Univision Commc'ns, Inc.*, 52 F. Supp. 2d 1011, 1027 (E.D. Wis. 1999) (removal was proper

---

[5] *See also* that "[f]ederal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the [f]ederal courts of those protections of their rights in those tribunals"); *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005), c*iting McKinney v. Bd. of Trustees of Maryland Cmt. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("The removal process was created by Congress to protect defendants. Congress 'did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it.'")

because two plaintiffs were fraudulently joined and "disregarded for diversity jurisdiction purposes"); *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 164 F. Supp. 3d 1040, 1045 (N.D. Ill. 2016) (noting that citizenship of fraudulently joined plaintiffs could be disregarded).[6]

The Supreme Court recently clarified that jurisdiction must be evaluated between each plaintiff-defendant pair. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1778-81 (2017). In *Bristol-Myers Squibb,* residents of California and 33 other states brought suit in California state court against a non-California manufacturer of the drug Plavix. *Id.* The manufacturer moved to dismiss the non-California plaintiffs' claims due to a lack of specific personal jurisdiction over the manufacturer in California.[7] *Id.* The non-California plaintiffs without specific personal jurisdiction sought to piggyback onto the jurisdiction by the California-plaintiffs who did have specific jurisdiction over the manufacturer. *Id.* The Supreme Court rejected the attempt at jurisdictional-piggybacking, reasoning that the "mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* Rather, whether jurisdiction existed between each individual plaintiff-defendant dispute was determined on its own without regard to whether

---

[6] Plaintiffs' motion to remand makes a half-hearted attempt to distinguish *In re Testosterone* (cited in Zurich's motion to sever, ECF # 67 at 7) on the basis that the court dismissed the case for lack of personal jurisdiction, but the Court did so first by examining whether certain plaintiffs had valid claims against the defendant – that is, by applying the fraudulent joinder doctrine to the plaintiffs. Plaintiffs here do not actually challenge the conclusion that the fraudulent joinder doctrine applies to all parties, both defendants *and* plaintiffs.

[7] The non-California plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source, nor did they claim that they were injured by Plavix in California or treated for injuries in California. *Id.* at 1778.

jurisdiction existed over other plaintiff-defendant pairs. Accordingly, *Bristol-Myers Squibb* stands for the proposition that jurisdiction is determined with respect to each individual plaintiff-defendant pair and without regard to the jurisdiction status other parties.[8]

Here, plaintiffs are seeking to do what *Bristol-Myers Squibb* prohibited, but in reverse. They are seeking to destroy jurisdiction, rather than obtain it, by having some plaintiffs who are diverse from their insurers piggyback onto the lack of diversity between *other* plaintiffs and *other* insurers, essentially asking the Court to ignore the jurisdiction of their own claim-pair by fraudulently consolidating all of the disputes together. This isn't permitted either. *Bristol-Myers Squibb* requires jurisdiction to be determined by examining each claim-pair. Jurisdiction cannot be created or destroyed for any particular plaintiff-defendant pair by ignoring the pair itself and relying on the citizenship of other parties that happen to have been wrongfully joined to their dispute.

The fact that Plaintiffs' complaint is rife with fraudulently joined claims is not contested in Plaintiffs' motion to remand, nor could it be. A Plaintiff obviously has no claim against a Defendant from whom it did not purchase an insurance contract. While it is Defendants' burden to establish fraudulent joinder, doing so does not require negating hypothetical liability when there is plainly no viable claim against a party. *See, e.g., Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992) ("If [Plaintiff's] theory were right, he could defeat diversity jurisdiction by joining his grandmother as a

---

[8] *Bristol-Myers Squibb* rejected the effort of certain plaintiffs in that case to ignore the basis of their claims against the defendant for purposes of specific personal jurisdiction. While the case dealt with personal jurisdiction, its logic stands with equal force as to subject-matter jurisdiction, requiring that basis of jurisdiction to be examined as to each claim-pair. This is the logic behind the fraudulent joinder doctrine generally, requiring claim-pairs to be examined individually and disregarding citizenship that would otherwise destroy subject-matter jurisdiction when a particular claim-pair is non-viable.

defendant—surely some set of facts might make her liable").  Instead of contesting that individual Plaintiff-Defendant pairs each have 41 Plaintiffs and 18 Defendants fraudulently joined to them, Plaintiffs seek to excuse the fraudulent joinder by asking the Court to ignore the jurisdictional analysis between the Plaintiff-Defendant pairs with a "real" dispute between them.  For this reason, Plaintiffs' claims for declaratory judgment and unjust enrichment that are styled as "all Plaintiffs v. all Defendants" also cannot realign the parties or destroy the individual insured-insurer Plaintiff-Defendant pairs to defeat jurisdiction, as the only "real" or valid claims in this case that can be considered for this Court's jurisdictional analysis exist between the individual claim-pairs.

Plaintiffs' principal authority for asking courts to put their head in the sand and allow fraudulent consolidation is a case involving facts remarkably similar to *Bristol-Myers Squibb,* but decided six years earlier by the Southern District of Illinois.  *See In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*, 779 F. Supp. 2d 846, 848-49 (S.D. Ill. 2011).  In *Yasmin*, residents of California and 11 other states brought suit in California state court against a non-California drug manufacturer and a California distributor.  *Id.*  Defendants removed, the case was transferred to the Southern District of Illinois, and plaintiffs moved to remand.  *Id.* The court explained that three California plaintiffs had a viable cause of action against the California distributor and all of the plaintiffs' claims were misjoined because the plaintiffs purchased the drugs from different pharmacies at different times and, thus, their claims did not arise out of the same transaction or occurrence.  *Id.* at 852-56.  Because there were viable claims between non-diverse parties, the court concluded that it had to remand even though diverse plaintiffs (from Georgia, Michigan, Tennessee, South Dakota, and North Carolina) also asserted claims against the California distributor, and even though the

8

court believed those claims were not properly joined with those of the non-diverse plaintiffs. *Id.* at 851-52. The court did not rule on "fraudulent joinder," because any non-viable claims were asserted against a *diverse* defendant, and did not affect the court's jurisdiction. *Id.* at 852. The court found it "troubling" that the plaintiffs engaged in "tactical gamesmanship" that "wrongfully blocks defendants' access to federal courts" by improperly joining the disputes between diverse plaintiffs and defendants with disputes between non-diverse plaintiffs and defendants. *Id.* at 856. The court stated that "[u]nfortunately, at this time, the Court does not have the authority to remedy the misjoinder," finding itself powerless to stop the jurisdictional-shenanigans. *Id.* at 857.

Unlike *Yasmin,* this Court is not powerless to stop the much more egregious procedural abuses in this case, which involve not only misjoinder but also fraudulent joinder. *Bristol-Myers Squibb* was decided six years after *Yasmin* and makes clear that district courts have the power to and, indeed, must evaluate jurisdiction by claim-pair. Had *Yasmin* been able to rely on *Bristol-Myers Squibb*, it could have examined the jurisdictional basis of each claim-pair and could have rejected the "tactical gamesmanship" of the plaintiffs by remanding the disputes between the California plaintiff and California distributor and retaining jurisdiction over the disputes between the Georgia, Michigan, Tennessee, South Dakota, and North Carolina plaintiffs and the California distributor. Just as *Bristol-Myers Squibb* does not permit establishment of jurisdiction over a defendant by improperly consolidating claims, neither does it permit destruction of jurisdiction by improperly consolidating claims. Severance naturally follows from the recognition that claims are improperly combined.

In addition, *Yasmin* is distinguishable from the present case. In *Yasmin,* it was undisputed that several California plaintiffs asserted "real" claims against the California

distributor that destroyed diversity. By contrast, in the present case, there are *zero* plaintiffs asserting "real" claims against Employers, Hartford, Starr, North American, Sentinel, Affiliated, Secura, Vigilant, Citizens, Zurich, Cincinnati, Badger, Charter Oak, Ohio Security, Twin City, and Society that are citizens of the same state(s) as those insurers. Therefore, diversity jurisdiction exists over the disputes between these insurers and the 36 diverse Plaintiffs that purchased insurance contracts from them.

*Yamsin* does not stand for the proposition that, like in this case, if a single Illinois insured has a viable cause of action against its own Illinois insurer, that the entire case must be remanded. Plaintiffs have joined unrelated Plaintiffs with unrelated Defendants, and each Plaintiff has its own contract with its respective insurer. On one hand, Plaintiffs argue that for purposes of whether there is diversity of jurisdiction, the Court should not look at each individual claim of an insured against its own insurance company, even if they are diverse from each other. Yet, on the other hand and citing *Yasmin*, Plaintiffs argue that the Court should isolate one single claim of an Illinois insured against its Illinois insurer, using that sole claim to destroy diversity. Plaintiffs cannot have it both ways.

Plaintiffs also incorrectly assert that *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409-10 (7th Cir. 2000) is "particularly instructive" in support of their arguments. This assertion is a superficial interpretation of that opinion. In *Garbie,* residents of Illinois and Michigan sued Chrysler, a Michigan business, alleging that their vehicles hadn't been painted properly. *Id.* Chrysler removed on the basis that the Michigan plaintiffs were fraudulently joined. *Id.* The Seventh Circuit explained that Chrysler could not "discard plaintiffs" because they all had a "real" claim against Chrysler. *Id.* Where *Garbie* is "particularly instructive" is in support of the proposition that when there is a

*real* dispute between a plaintiff and a defendant, the citizenship of both parties to that *real* dispute is considered. Unlike *Garbie,* however, the Defendants here do not all have "real" claims asserted against them by non-diverse Plaintiffs. *Garbie* does not hold that fraudulent joinder is inapplicable if *any* non-diverse plaintiff has a "real" claim against any *one* defendant. Nor does *Garbie* suggest that the fraud gets any better when multiple non-diverse plaintiffs have no "real" claims against *multiple* defendants, as Plaintiffs argue.

In summary, the fraudulent joinder doctrine requires looking at the citizenship of parties with an actual dispute between each other. To the extent Plaintiffs suggest otherwise, they are asking this Court to contradict the Supreme Court's *Bristol-Myers Squibb* ruling. When the Court examines the citizenship of the parties to actual disputes here, 16 of the 19 Defendant-insurers have actual disputes with only diverse Plaintiffs, which results in 36 diverse Plaintiff-Defendant pairs—36 suits over which the Court has jurisdiction—while six Plaintiff-Defendant pairs do not involve diverse parties and should be disregarded for jurisdictional purposes. After confirming its jurisdiction is proper, this Court may then decide to sever and remand those non-diverse pairs pursuant to the various pending motions to sever. Combining parties with non-viable claims through fraudulent joinder with multiple different lawsuits through misjoinder does not excuse the fraudulent joinder.

### B. Fraudulent Misjoinder Also Applies To Defeat Remand

#### 1. The Fraudulent Misjoinder Doctrine

Fraudulent or procedural misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a non-diverse or in-state defendant even though the

11

plaintiff has no reasonable procedural basis to join such defendants in a single action.[9] Fraudulent or procedural misjoinder can also apply when unrelated plaintiffs are improperly joined in order to destroy diversity. *In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 2012 WL 1118780, at * 2 (D.N.J. April 3, 2012) (citation omitted), *aff'd*, 751 F.3d 150 (3d Cir. 2014) ("Fraudulent misjoinder recognizes another basis for removal jurisdiction. Whereas fraudulent joinder focuses on the substantive deficiencies of a claim against a joined party, fraudulent misjoinder focuses on the procedural deficiencies of a party's joinder."). Fraudulent misjoinder was first recognized in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds, Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

In *Tapscott*, the Court held that plaintiffs' attempts to join certain defendants in the same action constituted fraudulent joinder because the transactions between certain plaintiffs and certain defendants had no real connection to the transactions involving the other parties. As the Court found, "misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action." *Tapscott*, 77 F.3d at 1360. The Court added: "We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder." *Id.*

---

[9] Fraudulent misjoinder is a term of art. The standard for applying the doctrine is objective, not subjective. *See Asher v. Minnesota Mining and Mfg. Co.,* 2005 WL 1593941, at *7 n. 2 (E.D. Ky. 2005) (the doctrine does not require a finding of a "bad faith" attempt to defeat diversity on the part of the plaintiffs: "As with the fraudulent joinder analysis, the Court does not believe that the plaintiff's actual motive is relevant to the analysis of whether the plaintiffs' claims are misjoined under state or federal rules.")

Numerous courts have followed *Tapscott*, adopting and applying the doctrine. *See, e.g., Brietner v. Merck & Co., Inc.*, 2019 WL 316026 (D.N.J. Jan. 24, 2019); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 1118780 (D.N.J. April 3, 2012); *Asher v. Minnesota Mining and Manufacturing Co.*, 2005 WL 1593941, at *4-7 (E.D. Ky. 2005) (agreeing with *Tapscott* that "just as this Court may find diversity jurisdiction exists where a plaintiff has no possible cause of action against a nondiverse defendant, this Court may also find diversity jurisdiction where diversity is destroyed only through misjoinder of parties."); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("[T]his [c]ourt agrees with the Fifth and Eleventh Circuits that the [fraudulent misjoinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court."); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147-148 (S.D.N.Y. 2001); *In re Diet Drugs*, No. 1203, 1999 WL 554584 (E.D. Pa. July 16, 1999).  *See also In re Benjamin Moore & Co.*, 318 F.3d 626, 630-631 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent jurisdiction").[10]

Legal scholars have also strongly advocated that federal courts adopt the doctrine, for reasons discussed in more detail below.  E. Farish Percy, *Defining the Contours of the Emerging Fraudulent Misjoinder Doctrine*, 29 Harv. J.L. & Pub. Pol'y

---

[10] *See also Bunnell v. Oklahoma MH Properties, LP,* 2012 WL 12863916 (W.D. Ok. May 11, 2012); *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424 (N.D.W.Va., Sept. 3, 2009); *Milliet v. Liberty Mut. Ins. Co.*, 2008 WL 147821, at 2-3* (E.D. La. Jan. 11, 2008); *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008); *Reed v. American Med. Sec. Group*, 324 F. Supp. 2d 798, 803-804 (S.D. Miss. 2004); *Burns v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 401 (S.D.W.V. 2004); *Smith v. Nationwide Mut. Ins. Co.*, 286 F. Supp. 2d 777, 781 (S.D. Miss. 2003).

569 (2006) (also noting at 587-589 that "district courts in a large majority of circuits have adopted and applied the doctrine in numerous complex cases, particularly mass tort and multi-district litigation"); Laura J. Hines & Steven S. Gensler, *Driving Misjoinder: The Improper Party Problem in Removal Jurisdiction*, 57 Ala. L. Rev. 779, 781 (2006);[11] Jeff Fisher, *Everybody Plays the Fool, Sometimes; There's No Exception to the Rule: Procedural Misjoinder Is Not an Exception to the Voluntary-Involuntary Rule*, 60 Baylor L. Rev. 993, 994 (2008).[12]

## 2. The Doctrine Should Be Adopted In This Unprecedented Case

Defendants are aware, and acknowledged in their consents to removal, that sister courts in the Southern District of Illinois and Northern District of Illinois have declined to adopt the fraudulent misjoinder doctrine. Defendants recognize that other district courts have criticized the doctrine. These decisions, however, are not binding on this Court. *Townsel v. DISH Network*, 668 F.3d 967, 970 (7ᵗʰ Cir. 2012) ("[D]istrict courts' decisions are not authoritative, even in the rendering district (other district judges may disagree). It takes an appellate decision to resolve a legal question – and this only within the circuit's territory…."); *First Merit Bank v. Grasso*, 2012 WL 3308737, at *2

---

[11] *Professors Hines and Gensler, supra*, at 780: Procedural misjoinder "offers federal courts a vital tool with which to police joinder gamesmanship. Absent this power, plaintiffs may preclude defendant access to federal courts by the relatively simple expedient of joining in state court largely unrelated claims against or on behalf of non-diverse parties. The resulting lawsuit thus fails the complete diversity test, rendering such cases removal-proof."

[12] *Fisher, supra*, at 1006: "State and federal rules set forth requirements for joining multiple claims or parties to a single suit, and a plaintiff should not be able to block a defendant's access to federal court by ignoring them. If we allow misjoined parties to hinder removal, any plaintiff can prevent removal as long as he has one viable claim against a non-diverse person. All he must do is join his claim against a local defendant to his claim against the diverse defendant, no matter how unrelated the claims are, and removal becomes impossible."

(N.D. Ill. 2012) ("[D]ecisions of sister district courts in this district are not binding on this Court.").

Further, in the cases where the Southern and Northern District courts of Illinois declined to adopt the misjoinder doctrine, none of them were like the one before this Court today. As counsel for Plaintiffs have reported to the press, this "mother of all" Covid-19 lawsuits is "unprecendented." None of the prior cases before the district courts in this Circuit involved a vast grouping of separate insureds who have no connection with each other, suing a host of separate insurance companies, who issued separate contracts to only their own individual insureds. None involved hundreds and hundreds of insured properties, located in 38 states and one in another country. *See, e.g., Creighton v. Bristol-Myers Squibb & Co.,* 2013 WL 12333214 (N.D. Ill., May 5, 2013) (plaintiffs sued four related defendants and alleged they defectively designed and inadequately tested Plavix and failed to warn about dangers associated with its use).

Courts in the Northern District have not explored, in any detail, the reasons why Judges in the Southern District, as well as other districts, have chosen not to adopt the doctrine of fraudulent misjoinder. The articulated reasons in those opinions do not support rejection of the doctrine. In fact, this unprecedented case cries out for adoption of the doctrine to protect the statutory rights of the non-diverse Defendants to remove.

First, certain courts have suggested that the state court should first deal with the issue of misjoinder and then, if the cases are severed by the state court, non-diverse defendants can, at that time, remove the case to federal court. *See* Plaintiffs' Opposition to Defendants' Motion to Sever, ECF # 133, page 7. None of the cases delve any deeper into this point. Treating the case in that way puts Defendants in a Catch-22 position. Without fraudulent misjoinder, diverse defendants could potentially

15

be locked in state court and forever blocked from exercising their statutory right of removal, despite the fact that the claims were not properly joined at the outset.

Specifically, a defendant is required to remove a case within 30 days after service of the initial pleading on the defendant setting forth the claim for relief upon which such action or relief is based. 28 U.S.C. § 1446(b).[13] Although at first glance it appears that Plaintiffs' Complaint was not removable, it is crystal clear that parties were misjoined to destroy diversity. Had the diverse Defendants first brought a motion to sever in Cook County, succeeded on that motion, and then removed this case to federal court, counsel for Plaintiffs likely would have argued that removal was not timely. *See Poulos v. NAAS Foods, Inc.*, 959 F.2d 69, 73, n. 4 (7th Cir. 1992) (noting in *dicta* that defendant could have discerned that joinder of one of the defendants was fraudulent when the complaint was served, and, therefore, the defendant should have removed within 30 days following service of the complaint, not within 30 days of dismissal of the non-diverse defendant on a motion for summary judgment). While courts have not addressed this issue in relation to fraudulent misjoinder, filing a motion to sever at the outset in state court, then, is an extremely risky option for a diverse defendant where non-diverse defendants have been fraudulently misjoined.

In addition, if this Court follows Plaintiffs' desired course and remands the entire case back to State Court to have a state court Judge decide the issue of severance,

---

[13] Plaintiffs also argue that removal is defective because the four Illinois defendants have not filed consents to removal. (ECF #132, page 7, n. 6.) The statute makes it clear, though, that only "properly joined" defendants have to consent. *See Midland Mgmt. Co. v. Am. Alt. Ins. Corp.,* 132 F. Supp. 3d 1014, 1024 (N.D. Ill. 2015) (consent is not required for defendants who have been fraudulently joined). Plaintiffs also reference the forum-defendant rule, but the rule does not apply here because the forum-defendants have been improperly joined. *Gottlieb v. Westin Hotel Co.,* 990 F.2d 323, 327 (7th Cir. 1993) ("Where a resident defendant has been fraudulently joined, the forum defendant rules is irrelevant.")

there is another potential roadblock facing the diverse defendants who wish to exercise their statutory right of removal.  Plaintiffs will object to Defendants' motion to sever filed in State Court.  If the State Court grants the motion to sever, each diverse defendant will then remove the case to federal court.  Yet, when that time comes, counsel for Plaintiffs will likely argue that the case is not removable because of the federal common law "voluntary-involuntary" rule. Under this rule, removal of a state court action is only allowed when a plaintiff voluntarily dismisses a claim against a non-diverse defendant. Although Defendants do not believe that a state court order granting a severance of misjoined parties is a dismissal that would be subject to the "voluntarily-involuntary rule," Plaintiffs will surely attempt to have the diverse defendants remanded back to state court based on the "voluntary-involuntary rule."  *See Vogel v. Merck & Co. Inc.*, 476 F. Supp. 2d 996, 1002-1004 (S.D. Ill. 2007).

Due to the way Plaintiffs have improperly crafted their Complaint, if their arguments on remand are adopted, diverse Defendants with a statutory right to removal could be forever locked in state court, based solely on the fact that Plaintiffs improperly joined claims together in a deliberate effort to avoid diversity jurisdiction.  If a diverse Defendant does not remove at the outset, Plaintiffs will argue that removal is untimely because it was more than 30 days after service of the pleading.  If a diverse Defendant starts in state court, successfully moves to sever, and then removes the case, Plaintiffs will argue the voluntary-involuntary rule warrants remand.  From the Plaintiffs' perspective, it is "heads I win, tails you lose."  Therefore, this Court should recognize the fraudulent misjoinder doctrine now and deny Plaintiffs' Motion to Remand.

Indeed, it is precisely because of this Catch-22 that legal scholars have advocated that courts should adopt the fraudulent misjoinder doctrine.  *See* Professor

Percy, *supra*, at 588-589: (criticizing the suggestion that the state court should first address the joinder issue because removal of a case after the state court has severed the misjoined parties arguably violates the "voluntary/involuntary" rule, and, in some cases, the state court may not sever the misjoined claims until more than one year after the case was filed: "Thus, unless the Supreme Court abolishes the voluntary-involuntary rule or Congress amends the removal statute to alter application of the rule, the fraudulent misjoinder doctrine is necessary to protect a diverse defendant's right to remove. Otherwise, a plaintiff could defeat removal by unreasonably joining a spoiler."); Professors Hines and Gensler, *supra*, at 810-812 (expressing serious doubt as to whether, in light of the voluntary-involuntary rule, it is practical to require defendants to first seek severance in the state court under the assumption that the case will be removable when the state court severs out the unrelated and misjoined spoilers, and further highlighting that, in any event, the removal must be filed within one year of the time the suit is filed in state court: The "'voluntary change' rule and the current one-year cap on diversity removal combine to make it unrealistic and unfair to demand that defendants seek severance in state court."). [14]

Second, some district courts have commented that the Seventh Circuit has not had the opportunity to consider the doctrine. *See Livingston v. Hoffman-La Roche, Inc.*, 293 F. Supp. 3d 760, 765 (N.D. Ill. 2018);[15] *Rutherford v. Merck & Co., Inc.*, 428 F.

---

[14] *See also Fisher, supra at 1006*: Explaining that a "gap exists" where a plaintiff joins a party against whom it has a valid, yet unrelated claim, and that the doctrine of procedural misjoinder is necessary to fill that gap: "[w]ithout it, the [voluntary-involuntary] rule might be exploited to keep cases locked in state court when the only properly joined parties are diverse".

[15] Judge Aspen acknowledged that defendants raised a "colorable fraudulent misjoinder" argument, but, instead of deciding whether to adopt or reject that doctrine, dismissed the case based on lack of personal jurisdiction.

Supp. 2d 842, 851 (S.D. Ill. 2006). Apparently, the district courts are hesitant to adopt the doctrine without such guidance. An order remanding a case to the state court from which it was removed, however, is not reviewable on appeal under 28 U.S.C. § 1447(d). It appears that the only way the Seventh Circuit would have the opportunity to weigh in on the doctrine is if a district court first denies a motion to remand, followed by a subsequent appeal. Lack of Seventh Circuit guidance, then, is not a reason to refuse to adopt the doctrine. In fact, the opposite is true. Denying the motion to remand will, in fact, allow for the possibility of review by the Seventh Circuit.

Third, a few courts have commented that the issue should be left up to Congress, not the courts. The fraudulent joinder doctrine, however, was adopted over 100 years ago, as a creation of the federal courts. *See* Percy, *supra,* at 577-578; Professors Hines and Gensler, *supra,* at 788-790. Fraudulent misjoinder is simply a logical extension of the fraudulent joinder doctrine. *See* Fisher, *supra,* at 1013 ("Essentially, procedural misjoinder is no more than the procedural equivalent of fraudulent joinder, and courts should treat it as such."). Further, 28 U.S.C. § 1441(b)(2) and 28 U.S.C. § 1446(b)(2)(A) reference only "properly joined" defendants, which implies that a non-diverse defendant who has been misjoined should not be used to defeat jurisdiction.

Fourth, certain courts highlight that it is unclear whether a federal court should apply the federal or state joinder rules in applying the fraudulent misjoinder doctrine. *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d at 854, n. 2. There is, in fact, a difference of opinion around the country. This, however, does not warrant a refusal to

adopt the doctrine here. In this case, since the Illinois joinder rules are substantially similar to the federal rules, the issue is not relevant.[16]

Fifth, some courts mention that the standard for applying the doctrine is not consistent across the country, and perhaps difficult to apply. *Rutherford v. Merck & Co., Inc.*, 428 F. Supp. 2d at 852-853. This, however, is not a reason to reject the doctrine either. Federal courts apply standards to cases every day, even if there is a lack of consistency among the circuits. In fact, there is inconsistency across the county on the standard to apply for fraudulent joinder, yet courts have recognized that doctrine for over 100 years. *See* Percy, *supra* at 579 (highlighting the different tests courts employ to apply the fraudulent joinder doctrine).

Finally, in rejecting the doctrine, some courts fall back on the presumption of favoring plaintiffs' choice of forum. As Plaintiffs repeat, they are the "masters of their own complaint." This, however, is merely a common law presumption. When a non-diverse party has been added to destroy diversity, a defendant's statutory right to remove should prevail over a common law presumption.[17]

---

[16] *See* 735 ILCS 5/2-404 and 5/2-405; *Emil Buck & Sons, Inc. v. Int'l Press Servs., Inc.*, 1986 WL 7668, at * 1 (N.D. Ill. June 27, 1986) (describing federal and Illinois state joinder requirements as "identical"). *See also Asher,* 2005 WL 1593941, at * 7 ("Here, the Court need not decide whether federal or state joinder rules apply where there is an allegation of misjoinder because the Kentucky and federal rules regarding misjoinder are, in all significant respects, identical."); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 1118780, at * 3 (whether to apply federal or state joinder rules not an issue because Missouri rules "substantively identical" to the Federal Rules); *Brietner v. Merck & Co., Inc.*, 2019 WL 316026, at * 3 (D.N.J. January 24, 2019) (noting New Jersey and Federal joinder rules are "substantially similar"); *Sutton v. Davol, Inc.*, 251 F.R.D. at 505 (since California and Federal joinder rules were similar, it was "unnecessary to resolve" whether state or federal joinder rules applied).

[17] *See Elrod v. Bayer Corp.*, 2020 WL 4284416, at *2 (N.D. Ill. July 27, 2020), *citing Schur v. L.A. Weight Loss Centers, Inc.*, 577 F.3d 752, 763 (7th Cir. 2009) ("While a 'plaintiff typically may chose its own forum, … it may not join a nondiverse defendant simply to destroy diversity jurisdiction'".); *Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 2007 WL 2572048, at *3 (D. Minn. Aug. 30, 2007) (where a non-diverse party cannot be properly joined under the

Fraudulent misjoinder is simply a logical extension of the judge-made fraudulent joinder doctrine, and is necessary in light of the risk to diverse defendants posed by the voluntary-involuntary rule. Simply saying the state court should consider the issue of joinder first is not a remedy at all. *See* Professors Hines and Gensler, *supra*, at 783 ("We believe that it is the obligation of federal courts to exercise such authority [adopting the doctrine] rather than washing their hands of the problem by relegating the task to state courts.").

### 3. The Fraudulent Misjoinder Rule Applies In This Case

Fraudulent misjoinder applies to this unprecedented case. In performing the analysis, a court examines whether the joinder of plaintiffs and/or defendants in a single action is proper under Rule 20(a)(1) and (2) of the Federal Rules of Civil Procedure or the similar state rule of procedure. To be permitted to join plaintiffs or defendants in a single action, Rule 20 requires (1) a claim for relief asserting joint, several, or alternative liability, (2) arising from the same transaction, occurrence, or series of transactions or occurrences, and (3) a common question of law or fact. Fed. R. Civ. P. 20(a).

Defendants have explained, in their Motions to Sever, why joinder is clearly improper. Defendants will address Plaintiffs' arguments as to why joinder was proper in their joint reply in further support of their Motions to Sever. This will also include a discussion of Plaintiffs' arguments regarding the "just terms" standard.

---

Federal Rules of Civil Procedure, "other interests, such as the Defendants' statutory right of removal, prevail over that of permitting plaintiff's choice of forum."); *Greene v. Wyeth*, 344 F. Supp. 2d at 685 ("[W]here the non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, other interests prevail over that of permitting a plaintiff's choice of forum"); *Hughes v. Sears, Roebuck and Co.*, 2009 WL 2877424, at * 5 (N.D.W.Va., Sept. 3, 2009) ("Where a non-diverse party cannot be properly joined under the Federal Rules of Civil Procedure, the defendant's right of removal should prevail over that of permitting a plaintiff's choice of forum.").

Plaintiffs argue that Defendants cannot satisfy the "egregious" standard in *Tapscott*. (ECF # 132 at 14.) Many courts reject the application of the "egregious" standard when considering misjoinder in the context of motions to remand.[18] Defendants agree with these cases and legal scholars that the "egregious" standard is not appropriate. *See* Professor Percy, *supra*, at 614-615 (advocating that courts should apply a "reasonable basis for joinder" standard); *accord* Fisher, *supra,* at 108.

Tthe standard should be whether there is a reasonable basis to believe that the state court would find that all the parties and all the claims in Plaintiffs' "mother of all" such lawsuits were properly joined. The answer here is clearly no. Regardless, however, of which standard to apply, the standard has been satisfied in this case. It is egregious and there is no reasonable basis to join, in a single action, 42 separate and unrelated insureds against 19 separate insurers, in a case involving over 710 locations, in 38 states and British Columbia. Adding four non-diverse spoiler Defendants, insuring only 4.6% of the locations involved in the case, should not be countenanced.

## II. Plaintiffs' Unprecedented Action Will Not Promote Efficiency, Judicial Economy, Cost Savings and Lead To Quick Decisions On The Merits

Plaintiffs argue that they chose to file the "mother of all" such lawsuits for the purposes of efficiency, judicial economy, cost savings and so that a single state court judgment could "quickly" decide the common issues. This makes no sense.

---

[18] *See, e.g., Asher v. Minnesota Mining and Mfg. Co.,* 2005 WL 1593941, at *8 (E.D. Ky. 2005) (agreeing with other courts that something more than "mere misjoinder" is required, and finding that "the proper inquiry … is whether there is even arguably a reasonable basis for predicting that the state court would find that the claims are properly joined."); *Burns v. Western Southern Life Ins. Co.*, 298 F. Supp. 2d 401, 403 (S.D.W.V. 2004) (court rejected an "egregious" standard, noting that "[a]dding what would be in essence a state-of-mind element to the procedural misjoinder inquiry would overly complicate what should be a straightforward jurisdictional examination."); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (court rejected an "egregious" standard, noting that the use of "fraudulent" in fraudulent misjoinder was merely a "term of art"); *In re Rezulin Prod. Liab. Litig.*, 168 F. Supp. 2d 136, 147-148 (S.D.N.Y. 2001).

Plaintiffs' action includes 42 separate plaintiffs, 19 different insurers each with different contracts, and over 710 locations in 38 states and British Columbia. In addition to the 710 (or more) locations for which there will have to be discovery, the parties will have to address at least 38 state executive orders, proclamations, and guidelines, as well as many additional county and municipal orders. There will have to be discovery regarding the alleged business income losses at each of the locations. Given the number of defendants, there will be a whole host of defense counsel present at every court hearing, telephone call, video conference, meeting, and deposition. In its present form, there will be nothing efficient or quick about this lawsuit.[19]

Take, for example, Manny's, a Chicago icon with but a single location. Manny's is insured by Society. Or Joy District, a nightclub in River North, with a single location. It is insured by Spriska, an Illinois insurance company. It is not plausible that either of these insureds would honestly claim it is more efficient for them to be grouped in this massive lawsuit with a multitude of others, with at least 708 other locations that have nothing to do with their establishments. Had they filed individual suits earlier, the coverage issues under each of their insurance contracts could have been fully briefed by now. They may not like what courts decide,[20] but the process would be quick, efficient, and cost-effective.

---

[19] *See, e.g., In Re Diet Drugs*, 1999 WL 554584, at *3 (E.D. Pa. 1999) ("The joinder of several plaintiffs who have no connection to each other in no way promotes trial convenience or expedites the adjudication of the asserted claims. Rather, the joinder of such unconnected, geographically diverse plaintiffs that present individual circumstances material to the final outcome of their respective claims would obstruct and delay the adjudication process. Given Plaintiffs' vast geographic diversity and lack of reasonable connection to each other, the court finds that the attempted joinder of the nonresident Plaintiffs wrongfully deprives Defendants of their right of removal.")

[20] With only a few exceptions, courts around the country have been granting motions to dismiss insured's complaints for failure to state a claim, primarily because there is no direct physical loss

Plaintiffs add that the Court should decline severance, otherwise "many parties will be forced to simultaneously litigate the same issues based on the same facts at the same time in both state and federal courts." (ECF # 132 at 3.) This is not true. Each Plaintiff will only be litigating in a single court. Joy District, for example, will be only litigating in state court, not federal court. Only counsel for Plaintiffs will be litigating separate cases in both state and federal court, on behalf of its respective clients. This is simply a non-issue created by counsel for Plaintiffs.

### III.   Public Policy Strongly Favors Federal Diversity Jurisdiction By Disregarding The Improperly Joined Parties

Sanctioning Plaintiffs' attempt to create the "mother of all" cases via fraudulent consolidation has significant negative repercussions. Permitting this improper joinder would allow the claims of a plethora of unrelated insureds against a multitude of unrelated insurance companies to be combined in a single action. In the future, counsel will attempt to find the state where it can obtain personal jurisdiction over the most insurance companies, and then add as defendants a few insurance companies who are citizens of that forum-state. The only limit is how many clients the law firm (or a combination of law firms) can find to sign up and join the lawsuit.

Consider a hurricane that threatens Florida, and the Governor and Mayors order businesses to close and/or individuals to evacuate. The hurricane turns then east, missing the coastline. Yet, thousands of businesses evacuated, and they all have civil authority coverage under their respective insurance policies. The alleged common

---

or damage, which is required to trigger coverage. *See, e.g., Sandy Point Dental, PC, v. The Cincinnati Ins. Co.*, No. 20-cv-2160, 2020 WL 5630465, *3 (N.D. Ill. Sept. 21, 2020) (Gettleman, R.) ("In essence, plaintiff seeks insurance coverage for financial losses as a result of the closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss – a prerequisite to coverage.")

issue may be whether there is civil authority coverage. Counsel could join every business in Florida as plaintiffs in one lawsuit in Florida State Court. This cannot be.

Indeed, after the great Chicago Fire of 1871, every insured business in Chicago could have joined to sue, in a single action, every insurance company, with the common question being whether Ms. O'Leary's cow caused the fire. This also cannot be.

In Plaintiffs' world, there would be no need for MDLs. Counsel would ensure that their state court actions are removal-proof. Otherwise diverse defendants will be locked into state court and deprived of their statutory right to removal. This also cannot be.

## Conclusion

Defendants respectfully request that this Court find that it has diversity jurisdiction and deny Plaintiffs' Motion to Remand. Subsequently, this Court should sever the parties and the claims, and then re-evaluate jurisdiction for each newly severed case. Any cases where there is a lack of diversity between the insured Plaintiff and its Defendant insurer could then be individually remanded.

WHEREFORE, these Certain Defendants request that this Court find that diversity jurisdiction exists between all properly joined parties, deny Plaintiffs' motion to remand, and for such other relief as this Court may deem fair and just.

Dated: October 9, 2020

 /s/ K. Clark Schirle
K. Clark Schirle (ARDC No. 6199270)
*cschirle@butler.legal*
Jonathan K. Barger (ARCD No. 6277079)
*jbarger@butler.legal*
BUTLER WEIHMULLER KATZ CRAIG LLP
115 S. LaSalle Street, Suite 3200
Chicago, Illinois 60603
(312) 462-9200
*Attorneys for Employers Insurance Company of*
*Wausau and Ohio Insurance Security Company*

## CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2020, a copy of foregoing **CERTAIN DEFENDANTS' JOINT OPPOSITION IN RESPONSE TO PLAINTIFFS' MOTION TO REMAND** was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the Court's CM/ECF system.

Butler Weihmuller Katz Craig LLP

By: *    /s/ K. Clark Schirle    *
Attorneys for Defendants, *Employers Insurance Company of Wausau and Ohio Security Insurance Company*

K. Clark Schirle
Jonathan K. Barger
BUTLER WEIHMULLER KATZ CRAIG LLP
115 S. LaSalle Street, Suite 3200
Chicago, Illinois 60603
(312) 462-9200
*cschirle@butler.legal*
*jbarger@butler.legal*