**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LETTUCE ENTERTAIN YOU ENTERPRISES, INC., et al., | Case No. 1:20-cv-05140 |
| *Plaintiffs,* | Honorable Robert M. Dow Jr. |
| *vs.* | |
| EMPLOYERS INSURANCE COMPANY OF WAUSAU, et al., | Removed from the Circuit Court of Cook County Case No. 2020 L 8099 |
| *Defendants.* | |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO REMAND</u>

John H. Mathias Jr.
David M. Kroeger
Gabriel K. Gillett
Megan B. Poetzel
Precious S. Jacobs
Joshua M. Levin
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Tel: 312-923-2917
Email: jmathias@jenner.com

*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 4

I.    Fraudulent Joinder Is Inapplicable.................................................................... 5

    A.    Fraudulent Joinder Does Not Apply Because Each Nondiverse Defendant Faces A Viable Claim. ......................................................................... 5

    B.    Defendants' Invented "Individual Claim-Pair" Theory Of Fraudulent Joinder Has No Merit And Should Be Rejected. ..................................... 7

II.    Fraudulent Misjoinder Is Not A Recognized Doctrine In This Circuit And Is Inapplicable To This Case. ............................................................................ 9

    A.    The Flawed Doctrine Of Fraudulent Misjoinder Has Been Rejected By Courts In This Circuit And Elsewhere, And This Court Should Not Adopt It. ......................................................................................................... 9

    B.    Fraudulent Misjoinder Is Inapplicable On The Facts Of This Case. ................... 14

III.    The Court Cannot Grant Severance Under Rule 21 Because The Court Does Not Have Jurisdiction, Nor Would Severance Be Warranted.................................. 23

    A.    Defendants' Severance Request Should Be Denied Because It Is An Improper Means To Create Diversity Jurisdiction................................. 23

    B.    Discretionary Severance Is Not Appropriate Here. ............................... 24

CONCLUSION.......................................................................................................... 28

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ampere Auto. Corp. v. Fullen*,
    2001 WL 1268554 (N.D. Ill. Oct. 17, 2001)..........................................................12

*Baker v. Johnson & Johnson*,
    709 F. Supp. 2d 677 (S.D. Ill. 2010)....................................................................24

*Bicycle Peddler, LLC v. Does 1-12*,
    295 F.R.D. 274 (N.D. Ill. 2013)..........................................................................22

*In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*,
    2016 WL 3901366 (N.D. Ind. July 18, 2016).............................................23, 24, 28

*Blue Springs Dental Care, LLC v. Owners Ins. Co.*,
    2020 WL 5637963 (W.D. Mo. Sept. 21, 2020) ....................................................26

*Bose Corp. v. P'ships & Unincorporated Ass'ns*,
    334 F.R.D. 511 (N.D. Ill. 2020)..........................................................................26

*Bristol-Meyers Squibb v. Superior Ct.*,
    137 S. Ct. 1773 (2017).................................................................................2, 8, 9

*Brown v. Bayer Corp.*,
    2009 WL 3152881 (S.D. Ill. Sept. 28, 2009) ......................................................12

*In re Covid-19 Bus. Interruption Prot. Ins. Litig.*,
    MDL No. 2942 (JPML 2020) ............................................................................27

*Creighton v. Bristol-Myers Squibb & Co.*,
    2013 WL 12333214 (N.D. Ill. May 10, 2013) ....................................................10

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
    138 S. Ct. 1061 (2018).....................................................................................11

*Dianoia's Eatery v. Motorists Mutual Ins. Co.*,
    No. 20-706 (W.D. Penn. May 19, 2020)..............................................................25

*In re Fosamax Prod. Liab. Litig.*,
    2008 WL 2940560 (S.D.N.Y. July 29, 2008) ......................................................14

*Garbie v. DaimlerChrysler Corp.*,
    211 F.3d 407 (7th Cir. 2000) .....................................................................5, 7, 14

*Gottlieb v. Westin Hotel Co.*,
  990 F.2d 323 (7th Cir. 1993) ................................................................7

*Green Tree Servicing, LLC v. Williams*,
  2014 WL 2865905 (N.D. Ill. June 24, 2014) .......................................4

*Grupo Dataflux v. Atlas Glob. Grp., L.P.*,
  541 U.S. 567 (2004).............................................................................24

*Hampton v. Insys Therapeutics, Inc.*
  319 F. Supp. 3d 1204 (D. Nev. 2018)..................................................11

*Hayes-Murphy v. Gonzalez*,
  2012 WL 6590500 (N.D. Ill. Dec. 18, 2012) ........................................4

*K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*,
  No. 20-CV-00437-SRB (W.D. Mo. Aug. 12, 2020)............................26

*Knudsen v. Liberty Mut. Ins. Co.*,
  411 F.3d 805 (7th Cir. 2005) ..............................................................13

*Krocka v. City of Chi.*,
  203 F.3d 507 (7th Cir. 2000) ..............................................................26

*Livingston v. Hoffmann-La Roche, Inc.*,
  2009 WL 2448804 (N.D. Ill. Aug. 6, 2009) .............................9, 10, 28

*In re Lopez*,
  116 F.3d 1191 (7th Cir. 1997) ............................................................13

*Meridian Sec. Ins. Co. v. Sadowski*,
  441 F.3d 536 (7th Cir. 2006) ..............................................................27

*Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.*,
  52 Ill. App. 3d 122 (1st Dist. 1977) ...............................14, 15, 16, 20

*Newman-Green, Inc. v. Alfonzo-Larrain*,
  490 U.S. 826 (1989)............................................................................24

*Optical Servs. USA/JCI v. Franklin Mut. Ins.*,
  No. BER-L-3681-20 (N.J. Sup. Ct. Aug. 13, 2020) ...........................26

*Osborn v. Metro. Life Ins. Co.*,
  341 F. Supp. 2d 1123 (E.D. Cal. 2004)...............................................11

*Peterson v. Vill. of Downers Grove*,
  103 F. Supp. 3d 918 (N.D. Ill. 2015) ..............................................4, 28

*Poulos v. Naas Foods, Inc.*,
959 F.3d 69 (7th Cir. 1992) ............................................................................5

*In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*,
2014 WL 257831 (S.D. Ill. Jan. 23, 2014) .................................................11

*Ridley Park Fitness, LLC v. Phila. Indem. Ins. Co.*,
No. 20080358 (Penn. 1st Jud. Dist. Aug. 31, 2020) ...................................26

*Rodriguez v. Credit Sys. Specialists, Inc.*,
17 Ill. App. 3d 606 (1st Dist. 1974) ............................................................21

*Ross v. Life Investors Ins. Co. of Am.*,
309 F. Supp. 2d 842 (S.D. Miss. 2004).......................................................13

*Rutherford v. Merck & Co.*,
428 F. Supp. 2d 842 (S.D. Ill. 2006)...........................................................13

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
577 F.3d 752 (7th Cir. 2009) .........................................................................8

*Sieron v. Hanover Fire & Casualty Insurance Company*,
485 F. Supp. 2d 954 (S.D. Ill. 2007).....................................................22, 23

*In re: Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*,
MDL No. 2964 (JPML Aug. 26, 2020) ........................................................28

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013)................................................................................14, 27

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
2020 WL 4692385 (W.D. Mo. Aug. 12, 2020)...........................................26

*Sweeney v. Sherwin Williams Co.*,
304 F. Supp. 2d 868 (S.D. Miss. 2004).......................................................24

*Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co. Ltd.*,
2020 WL 5939172 (M.D. Fla. Sept. 24, 2020) ...........................................26

*Wilson v. Pfizer, Inc.*,
2012 WL 1036824 (S.D. Ill. Mar. 27, 2012) ..............................................14

*Wolf v. Kennelly*,
540 F. Supp. 2d 955 (N.D. Ill. 2008) ..........................................................11

*Wolf v. Kennelly*,
574 F.3d 406 (7th Cir. 2009) .......................................................................12

iv

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Pracs. & Prod. Liab. Litig.*,
    779 F. Supp. 2d 846 (S.D. Ill. 2011)............................................................................6

*Young v. Arms*,
    2001 WL 34136070 (Cir. Ct. Cook Cnty. Jan. 17, 2001).........................................21

**STATUTES AND RULES**

735 ILCS 5/2-404 ..............................................................................3, 14, 15, 16, 20, 26

28 U.S.C. § 1332(d) ...........................................................................................................10

28 U.S.C. § 1407 ................................................................................................................27

28 U.S.C. § 1441 ..............................................................................................................2, 4

28 U.S.C. § 1446 ............................................................................................................2, 10

28 U.S.C. § 1447 ................................................................................................................10

28 U.S.C. § 1447(c) ...........................................................................................................12

Fed. R. Civ. P. 20(a) .......................................................................................................3, 22

Fed. R. Civ. P. 21 .........................................................................................3, 23, 24, 25, 28

Fed. R. Civ. P. 82 ...............................................................................................................12

Ill. Sup. Ct. R. 218 .............................................................................................................26

**OTHER AUTHORITIES**

*Manual for Complex Litigation, Fourth* § 10.21 (2004)..................................................26

## INTRODUCTION

Facing catastrophic financial losses and under the unprecedented circumstances of these times, Plaintiffs have joined together to pursue business interruption recoveries from their insurers, each of which has denied (or is expected to deny) coverage on the same threshold ground citing virtually identical industry standard policy language. Given that insurance policies are contracts governed by state law, Plaintiffs—all of which have ties to Illinois—elected to bring their claims in Illinois state court, consistent with Illinois's liberal joinder rules, to secure a prompt, efficient, and uniform ruling on this common legal issue. Defendants removed the case to this Court, despite a lack of complete diversity. As detailed in Plaintiffs' motion (Dkt. 132, "Remand Br."), removal was improper, subject matter jurisdiction is lacking, and this case should be remanded in toto.

Setting aside the tone and at times heated rhetoric in their response briefs,[1] Defendants do not meaningfully dispute the key facts or legal framework for deciding if removal was proper.

Defendants do not dispute that each Plaintiff procured an "all risk" insurance policy that covered property in Illinois and included industry-standard business interruption coverage. Defendants do not dispute that each Plaintiff sought coverage for the major losses caused by the executive shutdown orders in Illinois and elsewhere that have so physically impaired and detrimentally altered Plaintiffs' premises as to render them nonfunctional. Nor do Defendants dispute that each has denied (or will deny) coverage based on the same virtually identical language requiring direct physical loss of or damage to covered property. In short, Plaintiffs' claims are not "unrelated," as Defendants contend. Their claims all relate to Illinois and all present common legal questions that involve applying common policy language to common facts and circumstances.

---

[1] *See* Dkt. 138 ("Starr Opp."); Dkt. 139 ("Joint Opp."); Dkt. 140 ("Joint Reply"); Dkt. 142 ("Society Reply"); Dkt. 144 ("Vigilant Opp."); Dkt. 145 ("Zurich Opp."); Dkt. 150 ("Secura Reply").

Defendants raise three legal grounds purportedly justifying their removal, despite a lack of diversity jurisdiction, but none has merit.

First, Defendants raise fraudulent joinder. Defendants concede that under existing law the doctrine is inapplicable on the facts here: where each Plaintiff can "plead a viable cause of action against one of the individual Defendants," and every Defendant may be liable for a claim by a Plaintiff. (Starr Opp. 5–9; Joint Opp. 1–2, 5–6.) Defendants also acknowledge this rule has been applied—and joinder was not fraudulent—in a case where multiple plaintiffs brought claims against multiple defendants. (Starr. Opp. 7; Joint Opp. 8–9.) Without existing law on their side, Defendants ask this Court to embrace an unprecedented doctrine of their own creation: "fraudulent consolidation," where subject matter jurisdiction turns on the citizenship of "claim pairs." (Joint Opp. 1, 6–7.) The sole support Defendants offer for their invented doctrine is *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) ("*BMS*"), but that case only concerns specific personal jurisdiction and has nothing to do with "claim pairs," citizenship, fraudulent joinder, removal, or subject matter jurisdiction. Indeed, no court or commentator has ever suggested *BMS* is relevant to the issues here, or supports Defendants' newfound rule. This Court should reject it.

Second, most Defendants ask the Court to become the first in the Seventh Circuit to adopt fraudulent misjoinder. But they concede the doctrine has been widely criticized and rejected by most courts, and would require this Court to overlook its lack of jurisdiction, scrutinize whether joinder is proper under state law, and then *create* jurisdiction by severing nondiverse defendants. Still, relying mainly on academic articles, Defendants contend this case "cries out for adoption of the doctrine" to protect their "statutory rights . . . to remove." (Joint Opp. 15–22.) But they have no statutory right to remove here, where complete diversity is lacking, multiple Defendants are at home, and other prerequisites and exceptions are not met. *See* 28 U.S.C. §§ 1441, 1446, 1332(d).

This Court should not re-write the law to permit removal when Congress has not done so, and should not adopt fraudulent misjoinder as a way to circumvent clear limits on federal jurisdiction.

In any event, fraudulent misjoinder would be inapplicable here because the parties are properly joined under the liberal Illinois joinder rules that control, 735 ILCS 5/2-404; *id.* § 2-405, or under Federal Rule of Civil Procedure 20(a). Plaintiffs' claims all relate to Illinois and all present a common legal question (whether there is coverage under industry-standard "all risk" policies covering property in Illinois or issued by an Illinois insurer) arising from common factual circumstances (materially similar shutdown orders in Illinois and elsewhere that caused direct physical loss or damage to Plaintiffs' premises by physically impairing and detrimentally altering them) and a common series of transactions (simultaneous blanket rejection of coverage based on virtually identical standard language requiring direct physical loss or damage).

Third, Defendants contend fraudulent misjoinder applies by another name: severance, which Defendants argue is appropriate because joinder is improper. But Defendants ignore that post-removal use of severance is improper because, just like fraudulent misjoinder, it evades the complete diversity requirement and violates rules limiting federal jurisdiction. Nor can this properly joined case be severe on "just terms" as Rule 21 requires.

Defendants make clear they disdain that Plaintiffs have banded together to pursue their claims in Illinois state court, and that they would prefer to litigate Plaintiffs' claims separately, in federal court. But, as masters of their Complaint, Plaintiffs properly structured and filed this case to secure a prompt decision on the critical threshold issues they all face. This case should be remanded in its entirety to allow the Circuit Court of Cook County to do so without further delay.

3

**ARGUMENT**

As explained in Plaintiffs' Motion, this case lacks complete diversity and violates the forum-defendant rule. (Remand Br. 6 & n.5.) Defendants concede that at least four Defendants are citizens of Illinois as are many of the Plaintiffs, and that there is overlapping citizenship in a number of other states. (Joint Opp. 3–4.[2]) The Court therefore lacks subject matter jurisdiction, removal is improper under 28 U.S.C. § 1441, and the Court should remand. *See, e.g.*, *Hayes-Murphy v. Gonzalez*, 2012 WL 6590500, *1–2, *4–5 (N.D. Ill. Dec. 18, 2012); *Green Tree Servicing, LLC v. Williams*, 2014 WL 2865905, *1, *5 (N.D. Ill. June 24, 2014).

To avoid this result, Defendants urge the Court to *create* diversity jurisdiction by disregarding Plaintiffs' well-pled Complaint and fracturing its claims into more than thirty separate actions consisting of individual insured-insurer pairs.[3] Defendants ask the Court to use one of three procedural vehicles to restructure Plaintiffs' Complaint and engineer subject matter jurisdiction: (i) fraudulent joinder, (ii) fraudulent misjoinder, or (iii) severance. In their Motion, Plaintiffs explained why each of these jurisdiction-creating devices is inapplicable or improper. (Remand Br. 7–22.) None of Defendants' arguments change this conclusion.

---

[2] Zurich American Insurance Company ("Zurich") incorrectly asserts that Plaintiff Urban Plates LLC "forfeited the forum defendant rule" by joining its claim against Zurich with other Plaintiffs' claims. (Zurich Opp. 3.) Zurich provides no authority to support its assertion that joinder can forfeit the statutory forum defendant rule, and Plaintiffs are aware of none. In any event, Zurich cannot remove Urban Plates's claim to federal court because both Zurich (which is based in Illinois) and Urban Plates (which has a member who is a citizen of Illinois) are both citizens of Illinois for purposes of diversity jurisdiction.

[3] For the first time in their joint Reply in Support of Defendants' Motions to Sever, Defendants attach a chart of party pairs showing how Defendants would like the Court to sever this action. (Dkt. 140-2.) This chart should be stricken because it was improperly submitted for the first time in reply. *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015). Moreover, the chart is inaccurate. Plaintiffs do not address the substance of the chart here because it would not be proper to do so in reply in support of their motion to remand. However, if this Court decides to sever the case—despite lacking jurisdiction and despite joinder being proper—Plaintiffs respectfully request an opportunity to address how severance should be effectuated. (*See* Remand Br. 6 n.5.)

## I.       FRAUDULENT JOINDER IS INAPPLICABLE.

### A.      Fraudulent Joinder Does Not Apply Because Each Nondiverse Defendant Faces A Viable Claim.

The parties agree the doctrine of fraudulent joinder permits a court to disregard a party's citizenship where there are "non-diverse defendants against whom *only* non-viable claims are asserted" or "plaintiffs who assert non-viable claims against a single defendant." (Joint Opp. 5 (emphasis added); *see* Remand Br. 7–11.) Defendants further concede that each Plaintiff has alleged a viable claim and each Defendant faces a viable claim. (Joint Opp. 1–2 ("Each of the individual Plaintiffs can only plead a viable cause of action against one of the individual Defendants.")). That would seem to resolve the matter—under the well-settled definition of fraudulent joinder, the doctrine does not apply here.

Defendants, however, advocate for a new paradigm for fraudulent joinder, where the doctrine applies because: "Defendants here do not *all* have real claims asserted against them by non-diverse Plaintiffs." (*Id.* at 11 (emphasis added and internal quotation marks omitted).) Unsurprisingly, Defendants do not cite a single fraudulent-joinder decision supporting the theory they have invented.[4] That is because their theory is not how fraudulent joinder works. Under well-established caselaw that Plaintiffs and Defendants accept as controlling, as long as there is *at least one* viable claim pled against a nondiverse defendant then that claim (and the respective set of parties) is not fraudulently joined. (Remand Br. 8–9; Joint Opp. 5–6, 10.) *See Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) (holding fraudulent joinder is inapplicable as long as a plaintiff has alleged a "real" claim against a nondiverse defendant).

---

[4] For example, Defendants cite *Poulos v. Naas Foods, Inc.*, (*see* Starr Opp. 5, 8–9; Joint Opp. 7, 16), where the Seventh Circuit affirmed a finding of fraudulent joinder where the plaintiff "did not allege (nor, truthfully, could he allege)" a claim against the in-state defendant. 959 F.2d 69, 74 (7th Cir. 1992). Here, by contrast, it is undisputed that each Defendant—diverse and nondiverse alike—has a viable claim asserted against it, and thus joinder is not fraudulent. (*See* Joint Opp. 1–2.)

The rejection of fraudulent joinder in *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*—a multi-plaintiff, multi-defendant case like this one— shows why the doctrine is inapplicable here. 779 F. Supp. 2d 846, 848–52 (S.D. Ill. 2011). (*See* Remand Br. 8–9.) In *Yasmin*, certain California plaintiffs asserted viable claims against a California defendant, while other defendants faced claims only from plaintiffs who were diverse from them. 779 F. Supp. 2d at 848–50. Like here, the defendants who faced claims only from diverse plaintiffs removed to federal court and argued that the doctrine of fraudulent joinder rendered their removal proper, notwithstanding the California plaintiffs' claims against the California defendant. *Id.* The court rejected this argument, concluding that fraudulent joinder could not be the "basis for removal jurisdiction" because it was undisputed that the "California Plaintiffs have asserted viable claims against [the California defendant]." *Id.* at 849. Here, like *Yasmin*, the fact that there are certain Defendants who only face claims from Plaintiffs that are diverse from them does not allow the Court to bypass the jurisdictional requirement of complete diversity.

Defendants try to distinguish *Yasmin* by contending that claims between the nondiverse parties there were "intertwined" and "related" to the claims against the diverse defendants, whereas the claims here, according to Defendants, are "unrelated." (Starr Opp. 7.) Plaintiffs' claims are not "unrelated." *See infra* pp. 15–23. Even if they were, *Yasmin* did not reject fraudulent joinder because the claims were "intertwined" and "related." To the contrary, the court specifically found the "Plaintiffs have no connection with one another" and still concluded joinder was not fraudulent because viable claims were pled against the nondiverse defendant. 779 F. Supp. 2d at 848–49.

Defendants further contend *Yasmin* is distinguishable because there "it was undisputed that several California plaintiffs asserted 'real' claims against the California [defendant]," whereas here "*zero* plaintiffs" are "citizens of the same state(s)" as some Defendants. (Joint Opp. 9–10.) But

Defendants concede this case includes Defendants that are citizens of the same state as a Plaintiff, and Defendants that are citizens of the same state as the policyholder they insured. Defendants' point merely highlights how *Yasmin* is similar to this case: both here and there, some (but not all) defendants face claims from nondiverse plaintiffs. So here, as there, joinder is not fraudulent.

### B. Defendants' Invented "Individual Claim-Pair" Theory Of Fraudulent Joinder Has No Merit And Should Be Rejected.

Recognizing that the presence of viable claims against nondiverse Defendants precludes a finding of fraudulent joinder under settled law, Defendants invent a new, wholly unsupported theory of the doctrine. Defendants assert that in a fraudulent joinder analysis, "jurisdiction [must be] determined with respect to each individual plaintiff-defendant pair and without regard to the jurisdiction status [of] other parties." (Joint Opp. 6–8, 7 n.8; *see also* Starr Opp. 2.) Under this approach, diversity would be examined only "between the individual claim-pairs," and the diverse pairs would stay in federal court while the "non-diverse pairs" would be severed and remanded. (Joint Opp. 8, 11.) Defendants' newfound theory is very novel and very wrong.

Defendants' "individual claim-pair" theory is untenable on its face because it would eviscerate the doctrine of fraudulent joinder and conflict with Seventh Circuit precedent. In particular, Defendants' revamped doctrine cannot be reconciled with the Seventh Circuit's view that if a plaintiff alleges a "real" claim against a nondiverse defendant, a court may not "discard" any nondiverse "plaintiffs in order to make controversies removable." *Garbie*, 211 F.3d at 410. Defendants' approach would also contravene longstanding precedent holding that fraudulent joinder permits a court to disregard a nondiverse defendant's citizenship *only if* the defendant establishes "there is no possibility that a plaintiff can state a cause of action against [a] nondiverse defendant[]." *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Under Defendants' "claim-pair" approach, the court would never need to examine whether a viable claim is pled

7

against a nondiverse defendant because the court would determine diversity "without regard to the jurisdiction status [of] other parties"—even if those other parties asserted viable claims. (*See* Joint Opp. 6–8.) Defendants' approach to fraudulent joinder would thus transform the doctrine from a "difficult to establish" exception to the requirement of complete diversity, *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009), into a powerful tool for defendants to overcome the complete diversity requirement in a multi-party case whenever they wish.

Defendants do not cite a single decision discussing (much less applying) their created vision for fraudulent joinder. Defendants' sole source of supposed authority is *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017). (Joint Opp. 6–11.) But *BMS* lends no support to Defendants' "claim-pair" theory of subject matter jurisdiction. The case is about *specific personal jurisdiction*; the Court held that under "settled principles regarding specific jurisdiction," the Due Process clause protects a defendant from being brought into court in a jurisdiction where it is not at home if there is no "connection between the forum and the specific claims at issue." 137 S. Ct. at 1781. *BMS* says nothing at all about subject-matter jurisdiction, diversity jurisdiction, removal, or fraudulent joinder. Citizenship was not even relevant to the Court's personal-jurisdiction analysis. *See id.* at 1778–84; *id.* at 1785 n.1 (Sotomayor, J., dissenting).

The personal-jurisdiction concerns at issue in *BMS* have no bearing on the issue of diversity subject-matter jurisdiction before this Court. Defendants do not attempt to explain why the former would have any impact on the latter. (*See* Joint Opp. 7 n.8.) Nor do Defendants cite any case applying *BMS* in the context of subject-matter jurisdiction. Although the decision has been cited by courts more than 1,300 times, and in legal scholarship more than 700 times, Plaintiffs are not aware of any authority anywhere applying *BMS* to subject matter jurisdiction, addressing it in the context of removal, fraudulent joinder, fraudulent misjoinder, or severance, or even suggesting

that there is a connection between the case and those concepts. Simply put, there is nothing in Defendants' briefs or in *BMS* itself to suggest that subject-matter jurisdiction in actions removed on the basis of diversity should be determined based on the citizenship of a particular "claim-pair" or that the settled, narrow test for fraudulent joinder should be expanded in any manner.[5]

Because Plaintiffs' Complaint alleges viable claims against nondiverse Defendants, the doctrine of fraudulent joinder is inapplicable and cannot be used to justify Defendants' improper removal of an action that lacks complete diversity.

## II.     FRAUDULENT MISJOINDER IS NOT A RECOGNIZED DOCTRINE IN THIS CIRCUIT AND IS INAPPLICABLE TO THIS CASE.

As an alternative to fraudulent joinder, Defendants ask the Court to create complete diversity by adopting and then applying fraudulent misjoinder—a doctrine universally repudiated by the courts in the Seventh Circuit. This Court should respectfully decline.

### A.     The Flawed Doctrine Of Fraudulent Misjoinder Has Been Rejected By Courts In This Circuit And Elsewhere, And This Court Should Not Adopt It.

As Defendants acknowledge, no federal court in the Seventh Circuit has ever adopted fraudulent misjoinder, (Joint Opp. 14), and "many Circuit Courts of Appeal have not embraced the doctrine" (Starr Opp. 10). Plaintiffs previously explained the many reasons why "this doctrine has been highly criticized and rejected by [the] courts in the Northern District of Illinois and by courts in other districts of the Seventh Circuit."[6] *Livingston v. Hoffmann-La Roche, Inc.*, 2009 WL

---

[5] Insofar as *BMS* has any relevance here, it actually supports remand. Applying its holding, there is no dispute that each Defendant is subject to personal jurisdiction in Illinois because each Defendant insured property in Illinois or is at home here. The underlying principles of *BMS* support remand too, as the Supreme Court emphasized the importance of recognizing a court's jurisdictional limits, even if disregarding those limits might be efficient or worthwhile from a policy perspective. *See* 137 S. Ct. at 1780–81. Just as the California state courts could not overstep their jurisdictional boundaries to adjudicate claims not properly brought here, this Court cannot overstep its jurisdictional boundary to adjudicate Plaintiffs' claims that were properly brought in Illinois state court and are not removable because complete diversity is lacking.

[6] Defendants incorrectly assert that courts in the Northern District "have not explored, in any detail, the reasons why Judges in the Southern District, as well as other districts, have chosen not to adopt the

2448804, at *8 (N.D. Ill. Aug. 6, 2009). (*See* Remand Br. 11–13.) Recognizing the universal rejection of the doctrine in this Circuit, several Defendants advise this Court *against* applying it here. (*See* Starr Opp. 8; Zurich Opp. 1.)

Relying primarily on academic articles, Joint Defendants contend that this case "cries out for adoption of the doctrine" because, "[w]ithout fraudulent misjoinder, diverse defendants could potentially be locked in state court and forever blocked from exercising their statutory right of removal[.]" (Joint Opp. 15–16.) This is wrong on multiple levels.

First, Defendants wrongly presume they have an "important statutory right" to removal to begin with. (Joint Opp. 3.) Congress has provided removal rights in limited circumstances: when there is complete diversity, a defendant is not sued in its home state, and when other procedural requirements are met. *See* 28 U.S.C. §§ 1446, 1447. When Congress has seen fit to relax those requirements it has done so. *See* 28 U.S.C. § 1332(d) (permitting removal in certain multi-party cases with minimal diversity or home-state defendants). But Congress has not chosen to enact legislation to permit removal here. *See, e.g.*, S. 4317, 116th Cong. § 161 (introduced in Senate, July 27, 2020) (proposing to allow removal of a so-called "coronavirus-related action"); S. 4775, 116th Cong. § 2161 (placed on Calendar Senate, Oct. 1, 2020) (same); S. 4537, 116th Cong. § 141 (introduced in Senate, Sept. 8, 2020) (same); *see also* S. 297, 116th Cong. (introduced in Senate, Jan. 31, 2019) (proposing to remove complete diversity requirement). Because this is not a situation "'[w]here removal is permissible,'" Defendants have no "'important statutory right to transfer the case to a federal forum.'" (Joint Opp. 3 (citation omitted)).

---

doctrine." (Joint Opp. 15.) In fact, multiple Northern District decisions have rejected fraudulent misjoinder after considering and analyzing why the doctrine is fatally flawed. *See, e.g.*, *Creighton v. Bristol-Myers Squibb & Co.*, 2013 WL 12333214, at *3–4 (N.D. Ill. May 10, 2013); *Livingston*, 2009 WL 2448804, at *8.

Second, Defendants err by suggesting that being "locked" in state court is a problem worthy of a remedy. Indeed, a unanimous Supreme Court recently rejected arguments that removal must be permitted to prevent certain suits from being "stuck in state court." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1075 (2018). Addressing removal provisions in the Securities Litigation Uniform Standards Act, the Court explained that "[t]he statute says what it says—or perhaps better put here, does not say what it does not say." *Id.* at 1069. And when Congress did not clearly provide for removal of a particular class of cases, the Court "will not revise that legislative choice" even if doing so would make the law "more consistent or pure" or advance some other objective. *Id.* at 1073. In other words, federal courts should not expand the statutory right of removal that Congress conferred and confined to certain situations. "If further steps are needed," the Court admonished, "they are up to Congress." *Id.* at 1078.

Third, Defendants' argument that they would be "locked" in state court at all is a red herring. (*See* Joint Opp. 15–16.) Courts have long explained that the "proper" procedure for a defendant who believes it has been misjoined in state court is to "'challenge the misjoinder in state court *before* seeking removal.'" *Wolf v. Kennelly*, 540 F. Supp. 2d 955, 963 (N.D. Ill. 2008) (emphasis added) (collecting cases).[7] Defendants chose to ignore this clear instruction.[8] Instead, they opted to remove a case that on its face lacked complete diversity and featured home-state

---

[7] *See also, e.g.*, *In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.,* 2014 WL 257831, at *2 (S.D. Ill. Jan. 23, 2014) (same); *Hampton v. Insys Therapeutics, Inc.* 319 F. Supp. 3d 1204, 1211–12 (D. Nev. 2018) (same); *Osborn v. Metro. Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127 (E.D. Cal. 2004) (same)

[8] Defendants offer various reasons why "filing a motion to sever at the outset in state court" would have been a "risky option." (Joint Opp. 16.) Plaintiffs do not express a view on the arguments Defendants hypothesize Plaintiffs' might have raised if Defendants had followed judicial guidance by moving to sever in state court before attempting to remove. If Defendants were actually concerned about the potential impact of following the rules, they could have raised those issues with Plaintiffs in an attempt to reach agreement to avoid unnecessary litigation. Whether Defendants can properly remove this case in the future—an issue on which Plaintiffs take no position here—is not before this Court and this Court need not address it.

11

defendants, to ask this Court to overlook those defects, and to attempt to remake the law of removal and joinder as Defendants would prefer it to be. Having undertaken their misguided strategy at Plaintiffs' expense, Defendants cannot now complain that they would be prejudiced if it fails.[9]

Fourth, the arguments Defendants offer from a trio of academics do not hold up. (Joint Opp. 17–19.) Defendants, citing the professors, brush aside the concern many courts have expressed: because fraudulent misjoinder is an exception to the statutory requirement of complete diversity, only Congress—not the courts—can create such an exception to the limits Congress has imposed on the subject-matter jurisdiction of the federal courts. *See, e.g.*, *Brown v. Bayer Corp.*, 2009 WL 3152881, at *4 (S.D. Ill. Sept. 28, 2009). (*See* Remand Br. 18–19.) Defendants fail to contend with the "truism that federal courts may not expand their subject matter jurisdiction by judicial decision." *Id.*; *see also* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts."). As courts have explained, "the judicially-created fraudulent misjoinder doctrine is an exercise of federal common law-making power that is well outside the constitutional strictures on such law-making[.]" *Brown*, 2009 WL 3152881, at *4.

Defendants note that, to some academics, fraudulent joinder and misjoinder are "'[e]ssentially'" the same. (Joint Opp. 19 (citation omitted)). Courts trying to apply the doctrines see things differently. The confusion over whether state or federal joinder rules apply is a perfect example. (*Id.* at 19–20.) That "confusion" exists precisely because the doctrine of fraudulent

---

[9] Without conceding federal jurisdiction over this matter, Plaintiffs reiterate that they reserve the right to seek an order requiring that Defendants pay Plaintiffs' attorneys' fees and costs incurred as a result of Defendants' improper removal and attempt to sever. (Remand Br. 3 n.2.) *See* 28 U.S.C. § 1447(c) (authorizing award of fees incurred as a result of improper removal); *see also, e.g.*, *Wolf v. Kennelly*, 574 F.3d 406, 412 (7th Cir. 2009) (vacating order barring plaintiff from seeking attorneys' fees for improper removal based on fraudulent misjoinder); *Ampere Auto. Corp. v. Fullen*, 2001 WL 1268554, at *5 (N.D. Ill. Oct. 17, 2001) (awarding attorneys' fees for improper removal where "[c]omplete diversity was plainly absent on the face of the state court complaint[,][d]espite defendants' insistence on the application of the fraudulent joinder rule to a non-diverse plaintiff[.]")

misjoinder puts federal courts in the untenable position of trying to resolve "issues of permissive joinder under state law."[10] *See Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 852 (S.D. Ill. 2006). The universally accepted doctrine of fraudulent joinder does not create the same problem because it is clear that, as is customary under the *Erie* doctrine, the federal court applies federal substantive law to federal-law claims and state substantive law to state-law claims. Fraudulent *mis*joinder, however, is a "jurisdictional principle that requires federal courts as a regular matter to construe state procedural rules and to pronounce on the propriety of joinder thereunder," which is "an exceptionally weird and pernicious intrusion by federal courts into matters properly of state concern and a disruption of the orderly development of state law." *Id.* at 854–55.

Next, Defendants argue that the "difficult to apply" and inconsistent standards for fraudulent misjoinder are still "not a reason to reject the doctrine." (Joint Opp. 20.) Yet the Seventh Circuit has said the opposite time and time again, noting that confusion and inconsistency are exactly what courts should avoid in crafting jurisdictional rules. *See, e.g.*, *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005) ("[T]he first virtue of any jurisdictional rule is clarity and ease of implementation.); *In re Lopez*, 116 F.3d 1191, 1194 (7th Cir. 1997) ("Jurisdictional rules ought to be simple and precise" to avoid lengthy disputes over "where and when [the] merits shall be litigated."). This Court should, like all others in this Circuit, avoid the "enormous judicial confusion engendered by" fraudulent misjoinder. *Rutherford*, 428 F. Supp. 2d at 852.

---

[10] Defendants incorrectly claim that the confusion about whether state or federal law applies under fraudulent misjoinder analysis is "not relevant" because "the Illinois joinder rules are substantially similar to the federal rules." (Joint Opp. 20.) Defendants overlook that courts assessing the propriety of joinder look not only to the text of the relevant rule but also to the caselaw interpreting and applying it. As a result, applying different law could lead to different outcomes. *See Ross v. Life Investors Ins. Co. of Am.*, 309 F. Supp. 2d 842, 849 (S.D. Miss. 2004) (explaining that the distinction between applying state versus federal misjoinder is important, because, although the language of "both Rules" was "functionally identical," case law interpretations between state and federal courts differed).

Finally, Defendants dismiss the "presumption of favoring plaintiffs' choice of forum," reasoning that it is "merely a common law presumption" which should be subordinate to a defendant's "statutory right" to remove. (Joint Opp. 20.) But, as discussed above, Defendants here have no such statutory right to remove. And the principle that plaintiffs "are the masters of their complaints" has long been understood to allow them to "avoid removal to federal court" by structuring their lawsuit as they see fit. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013); *see also Garbie*, 211 F.3d at 410 (rejecting fraudulent joinder even if a party is added to "prevent removal"). This Court should reaffirm Plaintiffs' power to craft their own Complaint and reject using fraudulent misjoinder to recast the Complaint as Defendants would prefer it to be.

## B. Fraudulent Misjoinder Is Inapplicable On The Facts Of This Case.

Even if the Court were inclined to accept the doctrine of fraudulent misjoinder, the doctrine is not applicable here because Defendants cannot carry their burden to show all parties are not properly joined. *See Wilson v. Pfizer, Inc.*, 2012 WL 1036824, at *1–2 (S.D. Ill. Mar. 27, 2012).

As noted in Plaintiffs' Motion, the majority of those courts that have accepted fraudulent joinder "have held that state rather than federal joinder rules apply" to a federal court's analysis of whether joinder was proper in a removed case. *In re Fosamax Prods. Liab. Litig.*, 2008 WL 2940560, at *4 (S.D.N.Y. July 29, 2008). (Remand Br. at 14.) Defendants appear to agree. (*See* Joint Opp. 22 ("The standard should be whether there is a reasonable basis to believe that the *state court* would find that all the parties . . . were properly joined." (emphasis added))). Applying the two-part common-question, common-transaction test under Illinois's liberal, permissive joinder statutes, joinder is proper here. 735 ILCS 5/2-404; *id.* § 2-405; *Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.,* 52 Ill. App. 3d 122, 131 (1st Dist. 1977) ("*MGM*"). (*See* Remand Br. 14–17.)

14

Defendants' arguments to the contrary all fail.[11] First, Plaintiffs' claims raise a common question of law based on common factual circumstances: whether the executive shutdown orders caused direct physical loss of or damage to Plaintiffs' insured property within the meaning of each Plaintiff's policy. Defendants do not dispute that each of Plaintiffs' policies contained a virtually identical version of the industry-standard "physical loss or damage" requirement. (Joint Reply at 3.) Nor do they dispute that each insurer invoked (or is expected to invoke) this industry-standard provision as their basis for denying coverage to each Plaintiff. (*Id.*) That satisfies the relevant test: whether the claims will give rise to "*any* common question of law or fact." 735 ILCS 5/2-404; *id.* § 2-405 (emphasis added). As the Illinois Appellate Court has held, a common question of law exists—and the joinder of multiple plaintiffs against multiple defendants is proper—where "[t]he similarity of the contracts and procedures used by each plaintiff [] in dealing with defendants presents questions of law applicable to all plaintiffs." *MGM,* 52 Ill. App. 3d at 131.

Defendants contend *MGM* is distinguishable because the court held there was a common question of fact; specifically, the defendants' alleged breaches of contract were carried out in a manner that involved more than one of the plaintiffs. (Joint Reply at 12.) But Defendants completely ignore a *second, independent* holding: that joinder was proper because of a common question of law arising from the materially similar contractual provision in each plaintiff's contract with each defendant. 52 Ill. App. 3d at 131. In fact, the *MGM* court specifically found that second common question existed despite the presence of multiple factual differences between each plaintiff, each defendant, and each contract. The court noted that the plaintiffs' claims involved "[s]eparate . . . arrangements and [] terms [that] were negotiated for each" of the more than 700

---

[11] Defendants set forth these arguments in their Reply in Support of Defendants' Motions to Sever (Joint Reply 8–13), and incorporated them by reference, without any analysis, in their Response to Plaintiffs' Motion to Remand (Joint Opp. 21). Thus, Plaintiffs may properly respond to those arguments here.

films at issue in the plaintiffs' claims. *Id.* at 125. However, because the operative term underlying plaintiffs' claims was common across each of the contracts and was allegedly breached in a common manner, the court found the common-question requirement for joinder was satisfied. Like *MGM*, Plaintiffs' claims here present a common question of law because each Plaintiff's policy contains an identical (or substantively identical) operative term that each Defendant breached in the same manner under the same circumstances.

Without disputing that each Plaintiff's policy includes a virtually identical industry-standard physical loss or damage requirement, Defendants note that Plaintiffs and their policies are not identical in every respect. (*See* Joint Reply at 3, 13; Secura Joinder at 1–2.)[12] But the presence of some differences among Plaintiffs does not mean joinder is improper. The test for joinder is not whether *every* question will be common across the claims, but rather whether the claims will give rise to "*any* common question of law or fact." 735 ILCS 5/2-404 (emphasis added); *id.* § 2-405; *see also id.* § 2-405(b) ("It is not necessary that each defendant be interested as to all the relief prayed for, or as to every cause of action included[.]"). Here, Plaintiffs meet that standard because their claims raise common questions of law based on common factual circumstances: whether the executive shutdown orders that physically impaired and detrimentally altered Plaintiffs' properties satisfy the industry-standard physical loss or damage requirement in each of Defendants' "all risk" policies.

---

[12] For example, Defendants note that, in addition to denying coverage based on the physical loss or damage requirement, "some insurers denied coverage" based on "virus or other exclusions." (Joint Reply 13.) But this does not impair the commonality of the threshold merits question, *i.e.*, whether Defendants wrongly denied coverage by asserting Plaintiffs failed to satisfy the materially identical physical loss or damage requirement in each policy. Indeed, as Defendant Cincinnati Insurance Company recently explained in another pending action, "[i]f there is no direct physical loss in the first place, the existence or absence of a virus exclusion is irrelevant." Mem. in Support of Mot. to Dismiss at 11–12, *The Bend Hotel Dev. Co. v. The Cincinnati Ins. Co.*, No. 20-cv-04636 (N.D. Ill. Oct. 9, 2020), ECF No. 9.

Defendants next argue—without citation to authority—that any common questions here are inadequate because they arise from a "general subject matter" and lack other common facts. (Starr Opp. 2.) Offering a hypothetical comparison, Defendants say the joinder issue here is akin to whether every business in Chicago could have joined in a single suit to litigate coverage for damage caused by the Great Chicago Fire, "with the common question being whether Ms. O'Leary's cow caused the fire." (Joint Opp. Br. 24–25.) While the Chicago Fire may have given rise to a common question of causation, the similarities among the claims Defendants imagine end there. Each business may have been impacted differently depending on their type of business; where, when, and how they operated; and precisely how the disaster affected them. Their coverage claims may also have differed depending on the nature of the policy they purchased, and the specific reasons their claims were denied. In short, the relevant facts and circumstances may well have been different for each of the businesses.

Here, by contrast, the underlying material facts needed to resolve the common legal questions facing each Plaintiff are common across all Plaintiffs and all Defendants.

- Each Plaintiff restaurant or cultural institution purchased an all-risk insurance policy, from a Defendant doing business in Illinois, that provided coverage for business interruption;

- Each Plaintiff's policy contained industry-standard terms requiring direct physical loss of or damage to insured property in order to trigger such coverage;

- Each Plaintiff sustained direct physical loss and/or damage, beginning in mid-March 2020, as a result of the same circumstance: executive orders that detrimentally altered and physically impaired Plaintiffs' properties and rendered them nonfunctional as restaurants and cultural institutions;

- The executive shutdown orders and restrictive reopening orders that followed caused Plaintiffs to block off sections of their physical space; create or install barriers to prevent congregation; manipulate tables, chairs, and other equipment into nonfunctional arrangements; place physical markers on the floors or walls; and redesign routes for entrance and egress;

17

- Each Plaintiff submitted a claim for the loss and damage suffered beginning in mid-March 2020, as a result of those executive orders; and

- Each Defendant denied coverage (or is expected to deny coverage) on the same ground: that Plaintiffs did not satisfy the physical loss or damage requirement.

Further, the differences that Defendants emphasize do not undermine the commonality of Plaintiffs' claims. For example, Defendants repeatedly call attention to the fact that Plaintiffs' Complaint includes properties located in different states. (Joint Opp. 1, 3, 15, 22.) But Defendants ignore that Illinois is the central, common geographic nexus of all of Plaintiffs' claims. Each Defendant chose to insure Plaintiffs' property in Illinois, and each of those properties were harmed by the Illinois executive shutdown orders.[13] To the extent Plaintiffs' claims also involve locations in other states, it is not because they have "cobbled together" a "Frankenstein amalgamation of claims." (Starr Opp. 7, 9.) It is because certain *Defendants* voluntarily chose to simultaneously insure property in Illinois and elsewhere—including hundreds of locations across many states, without restriction—under a single policy.

That not every insured location is subject to the Illinois executive shutdown orders likewise does not preclude finding a common question here. There is no dispute that every insurer provided coverage for an Illinois location, and that each of those locations was subject to the Illinois executive order. Nor is there any dispute that, as Plaintiffs allege, the *material* aspects of each of the executive orders outside Illinois are the same: each order caused direct physical loss and damage by materially impairing and requiring detrimental alterations to Plaintiffs' insured premises, rendering them non-functional for the purposes for which their insurance was underwritten and priced. In addition, each of the executive orders issued in mid-March 2020. Any

---

[13] Defendant Zurich, an Illinois-based insurer, provided coverage for an Urban Plates location in Chicago as of March 2020. After the Illinois executive shutdown orders went into effect, however, that location was unable to open for business.

relatively minor differences in the duration or specific requirements of the executive orders is relevant only to the amount of damages, and does not undermine the common liability question—namely, whether the executive orders that have so physically impaired and detrimentally altered Plaintiffs' properties as to render them nonfunctional caused direct physical loss or damage.[14]

Indeed, the briefs Defendants have filed in business interruption cases elsewhere make clear that the merits question of whether Plaintiffs are entitled to coverage is common across all Plaintiffs and Defendants here. In case after case, Defendants have filed materially indistinguishable motions to dismiss and have relied on decisions involving other insurers, other insureds, other states, other executive orders, and other locations. *See, e.g.*, Mem. in Support of Mot. to Dismiss at 9, *The Bend Hotel*, ECF No. 9 ("Like the policies in *Sandy Point*, *It's Nice*, *Oral Surgeons*, *10E, LLC*, *Diesel Barbershop*, *Mama Jo's*, *Mastellone*, *Philadelphia Parking Authority*, *Source Food*, *Pentair*, *MRI Healthcare*, and other cases cited herein, the plain, unambiguous language of the Policy requires a physical alteration to property.").[15] Having argued

---

[14] Starr refers briefly to a forum-selection clause, which, according to Starr, requires that any claim under the Starr policy be filed in New York. (Starr Opp. Br. 1–2.) Starr is wrong, as a superseding provision of Starr's policy states that Starr "will submit to the jurisdiction of a court of competent jurisdiction within the United States." (Dkt. 10 at 84.) In any event, this Court need not address that issue now. Starr does not argue that the clause (even if enforceable) is grounds for severance, as Starr expressly does not seek severance and affirmatively disclaims it. (Starr Opp. Br.11 n.3.) Plaintiffs will address Starr's argument regarding the forum-selection clause at the appropriate time following the Court's ruling on Plaintiffs' Motion to Remand. *See* Minute Entry, Dkt. 128 (Sept. 15, 2020) (staying Plaintiffs' response to Starr's Motion to Transfer, which raises the forum-selection clause, until "14 days after the Court's ruling on the motion to remand").

[15] *See also* Remand Br. 16 n.11 (collecting Defendants' briefs in other pending cases); Mem. in Support of Mot. to Dismiss at 7–10, *1501 Washington St. Louis, LLC v. The Cincinnati Ins. Co.*, No. 20-cv-05922 (N.D. Ill. Oct. 12, 2020), ECF No. 12; Mem. in Support of Mot. to Dismiss at 6–10, *The Bend Hotel*, ECF No. 9; Mot. to Dismiss at 7–8, 13–14, 16–18, 20–23, *AIKG, LLC v. The Cincinnati Ins. Co.*, No. 20-cv-04051 (N.D. Ga. Oct. 7, 2020), ECF No. 3-1; Mot. to Dismiss at 13–18, 22–23, *Fegley Mgmt. & Energy, LLC v. The Cincinnati Ins. Co.*, No. 20-cv-04652 (E.D. Pa. Oct. 6, 2020) ECF No. 11; Mem. in Support of Mot. to Dismiss at 9–10, 12–13, 17–19, *Com. Office Furniture Co. v. The Charter Oak Fire Ins. Co.*, No. 20-cv-04713 (E.D. Pa. Oct. 2, 2020), ECF No. 3-1; Mem. in Support of Mot. to Dismiss at 7–15, *Royalty Banquet Hall, Inc. v. Society Ins.*, No. 20-cv-04477 (N.D. Ill. Sept. 30, 2020), ECF No. 17; Mem. in Support of Mot. to Dismiss at 9-13, *The Durham Wood Fired Pizza Co. v. The Cincinnati Ins. Co.*, No. 20-cv-00856 (M.D. N.C. Sept. 25, 2020), ECF No. 17; Mot. to Dismiss at 8–10, 12–16, 18, 20–21, *Oaklandish,*

elsewhere that the key question is the meaning of the industry-standard physical loss or damage requirement, regardless of any differences in policy provisions or shutdown orders, Defendants cannot credibly argue otherwise here as a means to frustrate Plaintiffs' valid choice to join together to bring their claims in a single action in state court.

Second, Plaintiffs' claims arise out of a common "series of transactions": Defendants' sale of "all risk" insurance policies containing materially identical industry-standard terms, as well as Defendants' blanket denial of coverage under those policies based on the identical or nearly identical terms requiring direct physical loss or damage. Defendants argue that Plaintiffs fail to show a common series of transactions because "[n]one of the Defendant-insurers took part in any way, direct or indirect, with the other insurers' issuance of their own policies." (Joint Reply at 11.) Defendants cite no authority for the purported requirement that insurers must have acted in concert for joinder to be proper, and Plaintiffs are not aware of any such authority. Even so, Defendants adopted virtually identical industry-standard physical loss or damage requirements in each of their policies, and then made the blanket decision to invoke that standard language as the basis for denying coverage for losses in Illinois (among other places) caused by the same factual circumstance—shutdown orders issued in March 2020 that rendered Plaintiffs' properties nonfunctional. Under Illinois's liberal permissive joinder rules, those actions constitute a common series of transactions. 735 ILCS 5/2-404; *id.* § 2-405; *see MGM*, 52 Ill. App. 3d at 131 ("The [Illinois joinder] statute is to be construed liberally in favor of joinder of plaintiffs when possible.").

---

*LLC v. Sentinel Ins. Co.*, No. 20-cv-04856 (N.D. Cal. Sept. 18, 2020), ECF No. 12; Mem. in Support of Mot. to Dismiss at 10–11, 16–25, *Ralph Kuhen, CPA v. The Hartford Fin. Servs. Grp., Inc.,* No. 20-cv-01669 (S.D. Cal. Sept. 18, 2020), ECF No. 6-1; Br. in Support of Mot. to Dismiss at 9, 11, 18–21, 23, *Moody and Jones v. Twin City Fire Ins. Co.*, No. 20-cv-02856 (E.D. Pa. Sept. 10, 2020), ECF No. 11-1.

As discussed in Plaintiffs' Motion, *Young v. Arms* demonstrates that the common-transaction prong does not—as Defendants suggest—require that each plaintiff and each defendant engage in a joint transaction. (Remand Br. 15 (citing 2001 WL 34136070, at *20 (Cir. Ct. Cook Cnty. Jan. 17, 2001)). Rather, a series of transactions may qualify as common for purposes of joinder if they share common and related features.

Defendants assert that *Young* is distinguishable because it involved a public nuisance claim, (Joint Reply at 10), but *Young*'s common-transaction analysis is not necessarily limited to that particular cause of action.[16] The *Young* court approved the joinder of multiple plaintiffs bringing claims against multiple defendants (various firearm manufacturers, distributors, and retail sellers), finding the common series of transactions was defendants' "practice of marketing and distributing handguns in a [particular] fashion," notwithstanding that the plaintiffs' claims "occurred at different times, in different places, on different dates, [and] involved different offenders, different Plaintiffs, different Defendants and different firearms." 2001 WL 34136070, at *19–20. Like *Young*, Plaintiffs' claims here arise out of a common series of transactions because Defendants engaged in multiple, substantively similar practices that gave rise to Plaintiffs' claims. Specifically, Defendants all adopted the standardized terms from which Plaintiffs' claims arise (*i.e.*, the physical loss or damage requirement); Defendants all issued policies to Plaintiffs containing such terms; and Defendants all made (or are expected to make) the uniform decision to

---

[16] Defendants also argue that this case is "more analogous" to *Rodriguez v. Credit Sys. Specialists, Inc.*, 17 Ill. App. 3d 606 (1st Dist. 1974), where joinder of claims was rejected. (Joint Reply 10.) *Rodriguez* is inapposite. The court there rejected joinder because plaintiffs' claims "depend[ed] completely upon the resolution of independent fact questions," which as explained above is not the case here. 17 Ill. App. 3d at 613. Defendants also point to *Rodriguez*'s statement that the execution of contracts "at totally different times" indicates "separate and distinct transactions." (Joint Reply 10 (quoting 17 Ill. App. 3d at 612–13).) But unlike *Rodriguez*, the contracts here all provided coverage as of March 2020. Moreover, the common series of transactions here is also Defendants' adoption of the standardized physical loss or damage requirement and their blanket decision to invoke that requirement when denying claims involving the same cause of loss under the same factual circumstances.

assert the industry-standard physical loss or damage term as the basis for denying coverage for the factual circumstance Plaintiffs all face.

If this Court were to be the first in this Circuit to adopt fraudulent misjoinder and then evaluate joinder under Federal Rule of Civil Procedure 20(a)—which the majority of courts that have adopted fraudulent misjoinder refuse to do—joinder is proper as well. (*See* Dkt. 133 ("Severance Opp.") at 10–13.) Defendants fail to distinguish the Rule 20(a) cases Plaintiffs cite. For example, in *Bicycle Peddler, LLC v. Does 1-12*, the court upheld the joinder of claims against multiple bit-torrent users who downloaded the plaintiff's movie at different times, reasoning that a "series" of transactions did not require a "direct transaction" between every defendant, but rather could be more "attenuated." 295 F.R.D. 274 (N.D. Ill. 2013). Defendants argue this case stands for only the limited proposition that "one plaintiff can join its claims against multiple defendants that each stole the same thing in the same way from the same plaintiff." (Joint Reply at 9.) But *Bicycle Peddler* carefully considered the "language of the Rule permitting joinder," and concluded that Rule 20(a) "expressly [] contemplate[s] that the transactional link between parties may be more attenuated." 295 F.R.D. at 278. And the principle of transactional relatedness that the court there applied is equally relevant to the circumstance here: a series of insurance policies and coverage denials, where the insurers all adopted identical (or nearly identical) language in their policies and then all used (or will use) such language to deny coverage for loss and damage resulting from materially identical causes of loss.

Defendants' argument regarding *Sieron v. Hanover Fire & Casualty Insurance Company* is also flawed. 485 F. Supp. 2d 954 (S.D. Ill. 2007). Defendants argue that because *Sieron* rejected joinder in a case involving multiple insureds against one insurer, joinder must be improper here given that Plaintiffs bring claims against multiple insurers. (*See* Joint Reply at 11.) But *Sieron* does

not support this conclusion. The court in *Sieron* found there was no common series of transactions because there was "no indication that [the insurer's] failure to pay [plaintiffs'] claims was the result of some common policy." 485 F. Supp. 2d at 958. Here, in contrast, the uniform decision by the multiple Defendant insurers that have denied (or will deny) coverage for the same factual circumstance by invoking the same industry-standard physical loss or damage term shows that Plaintiffs' claims do in fact arise out of a common practice among all Defendants. Thus, the common series of transactions requirement is satisfied.

## III. THE COURT CANNOT GRANT SEVERANCE UNDER RULE 21 BECAUSE THE COURT DOES NOT HAVE JURISDICTION, NOR WOULD SEVERANCE BE WARRANTED.

### A. Defendants' Severance Request Should Be Denied Because It Is An Improper Means To Create Diversity Jurisdiction.

Unlikely to succeed on fraudulent joinder or fraudulent misjoinder, Defendants propose that this Court could create complete diversity by another procedural device: severance under Rule 21. (Joint Opp. 11, 25; *see id.* at 21 (incorporating Defendants' reply in support of severance).) But the request for severance is merely fraudulent misjoinder by another name. Like that denigrated doctrine, Defendants' severance request asks this Court to blue-pencil a Complaint to engineer the diversity jurisdiction that does not exist on the face of the Complaint, and then retain jurisdiction over the re-constituted case. Every court in this circuit to have considered such a severance request in a removal action lacking complete diversity has rejected it. (*See* Remand Br. 17–21; *see also* Severance Opp. 4–7.) This Court should too.

Like fraudulent misjoinder, the post-removal use of Rule 21 to sever nondiverse parties facing viable claims "would utterly eviscerate the concept of complete diversity," by allowing federal courts to "create subject matter jurisdiction from thin air" and "turning the requirement of complete diversity into one of minimal diversity." *In re Biomet M2a Magnum Hip Implant Prods.*

*Liab. Litig.*, 2016 WL 3901366, at *7 (N.D. Ind. July 18, 2016). Employing Rule 21 in a removed action lacking complete diversity also "violates the Rule 82 prohibition on utilizing the Federal Rules of Civil Procedure to expand the jurisdiction of a federal court." *Sweeney v. Sherwin Williams Co.*, 304 F. Supp. 2d 868, 874 (S.D. Miss. 2004). It is thus "well settled" that joinder rules "cannot be employed" to dismiss plaintiffs with viable claims "solely to permit a defendant to acquire federal jurisdiction and remove the proceeding from the state forum[.]" *Baker v. Johnson & Johnson*, 709 F. Supp. 2d 677, 690–91 (S.D. Ill. 2010).

Defendants do not even attempt to grapple with the many reasons why courts have condemned using Rule 21 in the manner they suggest. Nor have Defendants cited a single case where a court granted severance to create diversity jurisdiction in a removed case like this one, where complete diversity is lacking and viable claims are pled against nondiverse defendants. Certain Defendants cite *Grupo Dataflux v. Atlas Glob. Grp., L.P.,* 541 U.S. 567, 572–73 (2004), and *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826, 836–37 (1989), for the proposition that the court may "fix[]" "jurisdictional deficiencies by severing-away the jurisdictionally-problematic parties." (Starr Opp. 10; *id.* at 11). But those decisions involved suits that were commenced in federal court—not removed cases lacking complete diversity on the face of the state-court complaint. Courts have repeatedly recognized as much, explaining that if *Grupo* and *Newman-Green* were read as Defendants suggest then "'the exception *Newman-Green* provides' would "swallow . . . the complete diversity requirement.'" *In re Biomet*, 2016 WL 3901366, at *7 (citation omitted). This Court should reach the same conclusion as its sister courts and reject the invitation to use Rule 21 to create complete diversity in this case.

### B.  Discretionary Severance Is Not Appropriate Here.

Defendants make one final attempt to splinter Plaintiffs' single state action into dozens of separate federal actions. Defendants contend that, even if Plaintiffs are correct that their claims are

properly joined, this Court should exercise its residual discretionary severance authority under Rule 21 to serve the interests of "efficiency" and "public policy." (Joint Opp. 22–25; *see* Joint Reply 13–15; Dkt. 19 (Citizens' Motion to Sever) at 4.) Defendants are wrong.

To begin with, Defendants' supposed efficiency concerns are not valid grounds to create jurisdiction by severing a removed case where the nondiverse defendants are properly joined and each face viable claims. Defendants neither cite a court that has done so, nor provide any response to the many courts that have rejected doing so. (*See* Remand Br. 18–21 (collecting cases.)) Simply put, judicial economy is not a valid reason to sever in this context.

Defendants' efficiency arguments are unavailing in any event. The scattershot structure Defendants favor, with dozens of separate cases in federal court and yet others in state court, would not advance efficiency for litigants or the courts. As discussed above, there are substantial commonalities among Plaintiffs' claims, including common legal questions arising from common factual circumstances. Plaintiffs believe it is more efficient—for both litigants and the courts—for a single Illinois state court judge presiding over a single case raising state-law issues to promptly rule on those common questions, rather than asking dozens of federal and state courts to simultaneously consider the meaning of materially identical policy language based on materially identical facts that arise in materially identical circumstances. *Cf.* Order at 5, *Dianoia's Eatery v. Motorists Mutual Ins. Co.*, No. 20-706 (W.D. Penn. May 19, 2020), ECF No. 3 (remanding business interruption case for lack of complete diversity and declining to exercise discretion under the Declaratory Judgment Act because the case "raises novel insurance coverage issues under [state] law which are best reserved for the state court to resolve in the first instance").

If Plaintiffs have sufficiently stated a claim, as other plaintiffs have,[17] proceeding as a single case in Illinois state court will also yield efficiencies going forward. Like in any complex case, the parties can work collaboratively to ensure discovery remains proportional to the needs of the case, subject to the court's supervision under by Illinois Supreme Court Rule 201(c)(3), and to address any management challenges that arise. *See* Ill. Sup. Ct. R. 218 (establishing pre-trial management procedures); *see also Manual for Complex Litigation, Fourth* § 10.21 (2004) (reciting the responsibilities of counsel in complex federal civil litigations). The court has other case-management tools to deploy, if needed. *See, e.g.*, *Krocka v. City of Chi.*, 203 F.3d 507, 516 (7th Cir. 2000) (affirming decision to bifurcate trial on liability and damages). And if severance were to make sense at a later juncture, the presiding judge could address it then. *See* 735 ILCS 5/2-404 ("If upon the application of any party it shall appear that joinder may embarrass or delay the trial of the action, the court may order separate trials or enter any other order that may be expedient."); *Bose Corp. v. P'ships & Unincorporated Ass'ns*, 334 F.R.D. 511, 517 (N.D. Ill. 2020) (denying severance "for the time being," without prejudice if "joinder proves to be unfair"). Especially given the major legal leaps this Court would need to take to find it has jurisdiction in the first place, it should not preemptively and proactively sever this case at this very early stage.

Defendants argue this single case should be severed now because the Judicial Panel on Multidistrict Litigation (JPML) recently declined to "consolidate hundreds of federal cases against numerous insurers into a single, industry-wide MDL." (Joint Opp. 1.) Critically, however, the

---

[17] *See Studio 417, Inc. v. Cincinnati Ins. Co.*, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020); Order, *K.C. Hopps, Ltd. v. Cincinnati Ins. Co.*, No. 20-CV-00437-SRB (W.D. Mo. Aug. 12, 2020), ECF No. 29; Order, *Optical Servs. USA/JCI v. Franklin Mut. Ins.*, No. BER-L-3681-20 (N.J. Sup. Ct. Aug. 13, 2020); Order, *Ridley Park Fitness, LLC v. Phila. Indem. Ins. Co.*, No. 20080358 (Penn. 1st Jud. Dist. Aug. 31, 2020); *Blue Springs Dental Care, LLC v. Owners Ins. Co.*, 2020 WL 5637963 (W.D. Mo. Sept. 21, 2020); *Urogynecology Specialist of Florida LLC v. Sentinel Ins. Co. Ltd.*, 2020 WL 5939172 (M.D. Fla. Sept. 24, 2020).

JPML applies a fundamentally different standard when deciding whether to create an MDL and forcibly transfer cases within the federal system than this Court applies to the question of severance in a removed action. Unlike in the MDL context, here Defendants have the burden to show removal was proper and severance is justified. *Compare* 28 U.S.C. § 1407 (allowing JPML to create an MDL and transfer actions when it "will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"), *with Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006) ("[T]he proponent of federal jurisdiction has the burden of proof."). Further, this Court—again, unlike the JPML—starts from the premise that it should defer to Plaintiffs' choice of forum and choice of case structure. *See Standard Fire*, 568 U.S. at 595.

In addition, the concerns cited by the JPML for not creating a single nationwide proceeding covering all federal business interruption cases are absent here. This case does not involve the wide range of businesses in different industries that the JPML was considering for consolidation. *See In re Covid-19 Bus. Interruption Prot. Ins. Litig.,* MDL No. 2942 (JPML 2020), ECF Nos. 1-2; 3-2; 6-1; 19-1; 26; 29; 75; 275; 542; 666; 694 (listing plaintiffs that appear to be dentists, bridal stores, shoe companies, hotels, travel agencies, importers, children's clothing stores, art stores, and barbershops). Nor does this case involve parties with no connection to the forum, as every Plaintiff and Defendant here has a substantial connection to Illinois. Unlike a transferee court receiving an MDL, this Court does not have to "establish a pretrial structure to manage numerous plaintiffs" or "identify common policies with identical or sufficiently similar policy language." (Joint Reply at 15; *id*. 140-5 at 3 (quoting Oct. 2, 2020 JPML decision at 3)). Finally, due to the commonality of the material facts underlying Plaintiffs' claims, "'much of [discovery]'" need not "be plaintiff- and property-specific.'" (*Id.*).[18] Therefore, the JPML's recent decisions do not support Defendants'

---

[18] Defendant Society Insurance contends for the first time in its Separate Reply in Support of Motions to Sever that the claims against it in this case should be severed because a Society-specific MDL has been

attempts to have this Court exercise jurisdiction it does not have to sever Plaintiffs' properly joined claims.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Motion to Remand, Plaintiffs respectfully request that the Court enter an order granting Plaintiffs' Motion and ordering Defendants to pay Plaintiffs' attorneys' fees and costs incurred as a result of improper removal.

---

created. (*See* Dkt. 142 at 2.) Society has waived this argument by failing to raise it in its motion to join the pending severance motions (Dkt. 104), despite knowing since August 2020 that the JPML was considering creating a Society-specific MDL. *See Peterson v. Vill. of Downers Grove*, 103 F. Supp. 3d 918, 925 (N.D. Ill. 2015) ("Arguments raised for the first time in reply briefs are ordinarily waived."). In any event, in Society's own words, the MDL will "be inefficient" and will "needlessly complicate and delay the prompt resolution" of the cases against it. *See* Society's Resp. to Order to Show Cause at 11, *In re: Society Ins. Co. COVID-19 Bus. Interruption Prot. Ins. Litig.*, MDL No. 2964 (JPML Aug. 26, 2020), ECF No. 32. Thus, there is no reason to sever the properly joined claims here solely to add them to the Society-specific MDL. Moreover, multiple courts have refused to use Rule 21 to sever parties so their action could be consolidated with a pending MDL. *See, e.g.*, *Livingston*, 2009 WL 2448804, at *7 (rejecting diverse defendants' argument that severance is warranted to avoid "inconvenience[]" of litigating "this case in state court, in light of the pending cases against them in the MDL"); *In re Biomet*, 2016 WL 3901366, at *8 (same).

Dated:  October 16, 2020                                    Respectfully Submitted,

                                                           By: /s/ *John H. Mathias Jr.*

                                                           John H. Mathias Jr.
                                                           David M. Kroeger
                                                           Gabriel K. Gillett
                                                           Megan B. Poetzel
                                                           Precious S. Jacobs
                                                           Joshua M. Levin
                                                           JENNER & BLOCK LLP
                                                           353 N. Clark Street
                                                           Chicago, IL 60654-3456
                                                           Tel: 312-923-2917
                                                           Email: jmathias@jenner.com


                                                           *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed via the Court's electronic filing system on this 16th day of October, 2020, to be served by operation of the electronic filing system on all ECF-registered counsel of record.


*/s/ John H. Mathias Jr.*